**PORTER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9920.

Circuit Court of Appeals, Ninth Circuit.

July 29, 1942.

---

[3] Interpolated.

Benjamin W. Henderson, of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Gerald L. Wallace, S. Dee Hanson, and Frederick E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

There is but one question presented by this petition for review, namely, whether the Porter Property Trustees, Ltd., is an association taxable as a corporation, or a pure trust. The Commissioner determined a deficiency in the income and excess profits tax liability of said Porter Property Trustees, Ltd., for the calendar year 1935, and the taxpayer petitioned the Board of Tax Appeals for redetermination of the deficiencies. The Board upheld the Commissioner, and this petition for review, filed by the "trustees," followed.

Prior to February 28, 1935, the entire capital stock of James Porter Investment Co., a Delaware corporation, was owned and held by James Porter and Katie E. Porter, husband and wife, and the members of their family. On that date, and for some time prior thereto, the James Porter Investment Company was the owner of certain personal property, and also held in fee simple certain land, mainly agricultural and unimproved, and situate in Kern County and San Luis Obispo County, California, Nobles County, Minnesota, and Grundy County, Iowa. The corporation acquired this land from James Porter and Katie Porter at the time of its incorporation in 1930, in exchange for its capital stock. Its personal property was partly acquired in like manner and partly as a result of business activities between 1930 and February 28, 1935. Certain of the real properties were improved both before and during the period held by the company and farming activities were engaged in thereon by lessees for profit on part of the land, while owned by the company. The shareholders of the corporation James Porter Investment Company and their relationship were as follows:

| | | | |
|---|---|---|---|
| James Porter | Father | 685 | Shares |
| Katie E. Porter | Mother | 1,858 | |
| Paul D. Porter | Son | 50 | |
| B. F. Shumway | Nominee for father | 50 | |
| W. M. Dennison | Husband of daughter | 65 | |
| Rebecca P. Wells | Daughter | 50 | |
| James Howard Porter | Son | 50 | |
| Total shares outstanding | | 2,808 | |

On February 28, 1935, James Porter, Katie E. Porter, Paul D. Porter, B. F. Shumway, W. M. Dennison, and James Howard Porter, as grantors, and James Howard Porter, Paul D. Porter, and John C. Porter, as trustees, executed and entered into a written "Conveyance and Contract" agreement, by which the "trust," Porter Property Trustees, Ltd., was created. By the terms of the trust agreement or instrument, the trustees were selected and appointed by the grantors, and were therein designated and described as the "board of trustees" and were authorized to act under and use the trade name of Porter Property Trustees, Ltd. At the time of the creation of the trust there were conveyed to the trustees all the shares of stock of the James Porter Investment Co., except the 685 shares of stock standing in the name of James Porter, and part of the shares in the name of Katie E. Porter. On the same day, the trustees, acting in their collective capacity, acquired from James Porter his shares in the James Porter Investment Co. in consideration for the assumption of a debt of $52,000 owed by him.

Immediately following acquisition of the shares of the Investment Company, the trustees exchanged the shares with the Investment Company for all of its assets, except one parcel of real estate located in Grundy County, Iowa, known as the "Porter Homestead." The homestead was then transferred to Katie Porter, the mother.

Shortly thereafter the Porter Investment Company was liquidated and dissolved.

The interests of the respective beneficiaries are described in the trust instrument as "expectancy fractions," which the said instrument provides: " * * * shall at first be allotted in the records of the Board under instructions delivered to the Board by James Howard Porter. Should fractions appear dormant thereby, while held dormant they shall not be reckoned with when apportioning in distributions, such being computed solely by or upon the fractions registered as to beneficiaries at time of making each distribution. Dormant fractions, their usefulness being contingent upon possible future conveniences, remain subject to the discretion of the Trustees."

Pursuant to the above provisions, under instructions from James Howard Porter, expectancy fractions were allotted in the records of the board of trustees as follows:

| | |
|---|---|
| Paul D. Porter | 290/1000 |
| John C. Porter | 290/1000 |
| Rebecca P. Wells | 65/1000 |
| Elizabeth P. Dennison | 65/1000 |
| James Howard Porter | 290/1000 |
| Total expectancy fractions | 1000/1000 |

The trust instrument provided, among other things, that the trust was irrevocable; that the trustees were authorized to add to their number and to choose their successors; that they were authorized to engage in any lawful business, to own, buy, sell, improve, etc., real and personal property, to own stock, engage in any industry or investment, "hoping thereby to make gain to the Estate"; that the trustees were made absolute owners of the trust property with full power of management thereof; that all income and trust funds, when collected and paid over to the trustees were to constitute a fund from which the trustees would pay trust obligations, reinvest or distribute to the beneficiaries, in their discretion; that the death of a beneficiary should not entitle his legal heirs or representatives to demand any partition of or distribution from the trust funds or properties, but his legal heirs might succeed to his interest; that the trustees might at any time, in their discretion, and from any available trust funds, make partial distributions to beneficiaries, and ultimately, upon termination of the trust, should distribute the entire residual trust funds to the beneficiaries in accordance with their proportionate interests; that the beneficiaries might be called upon by the trustees to meet annually or at other times and they might adopt resolutions but no act of the beneficiaries should be mandatory upon the trustees. The agreement or instrument also provided that the "contract and succession of Trustees and Property Holdings hereunder may continue indefinitely during any lawful term, in the discretion of the Trustees, * * *."

Since the inception of the trust in 1935, James Howard Porter has been the president of its board of trustees and, with the two other trustees, has managed its business; he is more active in its affairs than the other two, but confers informally with them. In 1935, the affairs of the trust were carried on as prescribed in the trust instrument. James Howard Porter executes all leases in behalf of the trust and attempts to realize a profit on these leases; farm lands owned by the Trust are leased on the same basis. A large part of the trust income in 1935 was realized out of royalties and a bonus paid it by an oil company lessee of certain of its lands. Other of its income was paid to it on installment contracts which had been transferred by the James Porter Investment Company in 1935.

Within the time provided by law the petitioner trust filed an individual income tax return under Title I of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int. Rev.Acts, page 664 et seq., disclosing thereon a net income of $7,192.38 and a tax liability of $337.31. No other return was filed by petitioners for the year 1935. In the deficiency notice the Commissioner determined that in 1935 petitioner was an association taxable as a corporation within the meaning of section 801(a) (2) of the Revenue Act of 1934, 48 Stat. 680, 771, 26 U.S.C.A. Int.Rev.Acts, page 790, and Articles 801 (2) and (3) of Treasury Regulations 86, and he further determined that petitioner was a personal holding company within the meaning of section 351(b) (1) of the Revenue Act of 1934, 48 Stat. 751, 26 U.S.C.A. Int.Rev.Acts, page 757, and Article 351 (2) of Regulations 86. In addition, for failure to file a return as required by Article 351-8 of Regulations 86, an assessment of 25% of the tax computed under Section 351(a) was levied.

Section 801(a) (2) of the Revenue Act of 1934, 48 Stat. 680, 771, provides that when used in the Act, "The term 'corpo-

ration' includes associations, joint stock companies, * * *." With reference to this section of the Act, Regulations 86, Article 801-1 states, "Thus a trust may be classed as a trust or as an association (and, therefore, as a corporation), depending upon its nature or its activities."

The petitioners contend that Porter Property Trustees, Ltd., is not an association within the meaning of the statute and regulation and, therefore, is not taxable as a corporation. In support of this contention, they argue that the "trust" is a pure "ancestral" or "traditional" trust which did not carry on a business, but limited its activities "to the normal care incidental to the property belonging thereto."

Problems involving facts somewhat similar to those in the instant case have been before the courts on numerous occasions, which, from time to time, have set down tests whereby the true nature of the enterprise may be ascertained for taxing purposes. In Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, the leading case on this question, the Supreme Court discussed the resemblance between associations and corporations, and then said:

"What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise, who act 'in much the same manner as directors,' may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking." 296 U.S. 344, 359, 56 S.Ct. 289, 296, 80 L.Ed. 263.

The Supreme Court also said, in the Morrissey case, 296 U.S. at page 361, 56 S.Ct. at page 296, 80 L.Ed. 263, that the character of the enterprise was "determined by the terms of the trust instrument." In Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 56 S.Ct. 285, 287, 80 L.Ed. 278, decided the same day as the Morrissey case, the Supreme Court expressed the thought as follows: " * * * Weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the state. *The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted.*" [Emphasis supplied.]

There are two tests to be applied to a trust in order to determine whether or not it is taxable as a corporation: (1) What is its purpose?; and (2) what is the extent of its business activity? Of the two, the first is the more important. Marshall's Heirs v. Commissioner, 3 Cir., 111 F.2d 935, 938. In Fidelity-Bankers Trust Co. v. Helvering, 72 App.D.C. 1, 113 F.2d 14, 17, appears a statement of the law on this subject well worth repeating:

"We are concerned here with a trust. Taxability as an association or corporation no longer turns on technical differences in organizational structure nor on the degree of control given to beneficiaries in management of trust affairs. Simulation by unincorporated organizations of corporate

forms and approximation of corporate advantages by skillful use of trust and contract devices have brought legislative classification with technical corporations for taxation and other purposes, and like action independently by courts. But not all trusts are taxable as corporations. Under the pertinent statutes only those engaged in doing business for profit or income are so taxed. A trust does not engage in business, for purposes of the tax, if its sole or principal object and activities are: (1) preservation of specified property; (2) liquidation of a trust estate; (3) distribution of income derived from another source. * * *"

■ The grantors under the trust instrument were all of the shareholders of the James Porter Investment Company (except the daughter, Rebecca P. Wells); the trustees acquired the shares owned by James Porter in consideration of assumption of an indebtedness owed by him. The trust was irrevocable and was to "continue indefinitely during any lawful term." The trustees were privileged or empowered to engage in any lawful business for the purpose of making gain to the estate. Trust income and trust funds were to be collected by the Trustees who were to pay the trust, obligations therewith and were to reinvest or distribute the profits to the beneficiaries. Death of a beneficiary does not cause a partition or distribution, but provision is made for recognition of the successor to a deceased beneficiary's interest.

There is here no expressed purpose of liquidation, or of conservation, but an avowed intent "to engage in any lawful business" in order to realize a gain or profit to the trust estate. Here is continuity of existence and operations "during any lawful term" despite any change in beneficiaries. Clearly, then, the trust instrument exhibits authority in the trustees to engage in business. The activities of the trustees do not compel a contrary conclusion, but give rise to the conclusion that the activities during the taxable year were sufficient to constitute carrying on business. Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Von Baumbach v. Sargent Land Co., 242 U.S. 503, 514, 515, 37 S.Ct. 201, 61 L. Ed. 460; Hecht v. Malley, 265 U.S. 144, 161, 162, 44 S.Ct. 462, 68 L.Ed. 949; Thrash Lease Trust v. Commissioner, 9 Cir., 99 F. 2d 925, 928. The activities here "went beyond transactions carried on for the single purpose of effecting a liquidation of assets; * * *." Willis et al. v. Commissioner, 9 Cir., 58 F.2d 121, 123. Cf. United States v. Rayburn, 8 Cir., 91 F.2d 162, 167, 168. Moreover, it is not alone what the trustees did during the taxable year, but what they were empowered to do. Morrissey v. Commissioner, 296 U.S. 344, 361, 56 S.Ct. 289, 80 L.Ed. 263; Commissioner v. Vandegrift Realty & Investment Co., 9 Cir., 82 F.2d 387, 390; Sloan v. Commissioner, 9 Cir., 63 F.2d 666, 669, 670. Cf. Helvering v. Washburn, 8 Cir., 99 F.2d 478, 481.

■ As a part of their argument that the enterprise was a pure ancestral trust, the petitioners urge that the transaction whereby the trust was created was a gift in trust from the parents to their children. Aside from the fact that this is not completely in accord with the terms of the trust instrument, the fact is immaterial. See Solomon v. Commissioner, 5 Cir., 89 F.2d 569, 571, where it is said: "It has been rightly determined to be an association, the grantor and the five trustees who initially took title to the entire 1100 beneficial shares being the original associates. The grantor contributed all the property, but her sons undertook the management of the enterprise and received for themselves and others shares in it. Each person on accepting shares in a business enterprise thus organized becomes an associate."

In United States v. Davidson, 6 Cir., 115 F.2d 799, 800, relied upon by petitioners, the trust instrument declared the primary purpose of the trust to be the conversion of the trust property into money and the distribution of the proceeds among the beneficiaries. In Blair v. Wilson Syndicate Trust, 5 Cir., 39 F.2d 43, 44, another of petitioners' authorities, the trustees were directed by the trust instrument to sell or otherwise dispose of the corpus of the trust estate as rapidly as could be done to advantage, and to distribute the proceeds to the beneficiaries. These two decisions treat of trusts which were clearly liquidating trusts, and are, therefore, distinguishable. A third case, Commissioner v. Guitar Trust Estate, 5 Cir., 72 F.2d 544, was decided more than a year before the Morrissey decision was handed down and, hence, is not authoritative. See, also, Commissioner v. Vandegrift Realty & Investment Co., 9 Cir., 82 F.2d 387, 391.

The Order of the Board of Tax Appeals is affirmed.