### MESSENGER CORPORATION v. SMITH, Collector of Internal Revenue.

### No. 8208.

Circuit Court of Appeals, Seventh Circuit.
June 8, 1943.

William B. Waldo, and Samuel O. Clark, Jr., Asst. Attys. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., Alexander M. Campbell, U. S. Atty., of Fort Wayne, Ind., and Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., for appellant.

James M. Barrett, Jr., Phil M. McNagny, Leigh L. Hunt, and Barrett, Barrett & McNagny, all of Fort Wayne, Ind., for appellee.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Whether an asserted loss was a deductible income tax loss or a capital expenditure is the issue. The taxpayer filed suit for a refund and the District Court found in its favor, granting judgment for $12,927.30 and interest. The Government appeals.

In March, 1937, plaintiff executed a contract with a broker whereby the latter was to effect the conversion of plaintiff's debentures into its common stock. Plaintiff agreed to, and immediately did, convey to the broker, as compensation, six thousand shares of its common stock, having the agreed value of $45,000. The broker became a bankrupt, May 20, 1937, having previously disposed of all but one of said six thousand shares. He had effected no transfer of plaintiff's debentures to stock.

Plaintiff reported the loss of the value of these six thousand shares in its income tax return for 1937. The Commissioner disallowed the asserted loss.

Sec. 23 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 827, 828, contains the following:

"In computing net income there shall be allowed as deductions: * * * (f) In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

Regulations 94, Art. 22 a-16, provide:

"Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances."

The trial court's findings of fact disclose that plaintiff at first contracted, July 23, 1936, with an Indianapolis broker to effect the conversion of the debentures into stock, agreeing to pay $1 for each share of stock taken in exchange, the first conversion date being July 15, 1937.[1] This contract was abandoned. On March 15, 1937, plaintiff entered into a similar contract with a Chicago broker. Four days later the contract was changed so that the compensation of the broker was to be six thousand shares of plaintiff's common stock, having a fair market value of $42,500.[2] Plaintiff issued the six thousand shares "but the Chicago broker did nothing to carry out its contract or to effect the conversion of these debentures and became a bankrupt on May 20, 1937, having previously disposed of all but one of the six thousand shares it had received" and that "by reason" of these facts "plaintiff sustained a loss of $42,500 during its fiscal year * * * 1938 * * * and said loss was not compensated for by insurance or otherwise."

Counsel for plaintiff states that no claim was filed in the broker's bankruptcy pro-

---

[1] This contract provided for the issuance by plaintiff of $340,000 of its 15 year 4½% debentures which debentures were convertible into common stock. It granted the Indianapolis broker the option of purchasing all these debentures at a discount.

[2] This figure is an obvious error. This figure should be $45,000, i. e., 6,000 shares at $7.50. The judgment was calculated on this valuation of the loss.

ceedings because the assets were so small, although demand was made for the six thousand shares of stock, which demand was ignored. Five percent was paid on claims in the bankrupt estate.

The Government contends: (1) There is no proof of a base on which to calculate the loss; (2) the loss, if any, was to stockholders of plaintiff, since all that occurred was that their proportionate interests were diminished (or diluted) by the additional stockholders, having rights in and to the corporate assets; (3) some services were performed by the broker, i. e., the creation of an active market, which was a preliminary step essential to a conversion of the debentures into stock, and therefore the trial court erred in holding there was a total loss; (4) the expense was not a deductible loss because concededly if the contract had been executed a capital transaction would have taken place, and the mere failure to complete the security exchange did not render it ipso facto a non-capital transaction.

At first glance it might seem illogical to hold that a cost, which if connected with a capital transaction and which is consummated, is a capital expense, that same cost, if connected with an unsuccessful capital venture should be an ordinary loss deductible from current income.

In the former case, for example, a corporation may have expended funds looking toward the acquisition of a new building, or commission fees, or architect's fees, etc., and such costs are added to the total capital cost of the building. These initial and incidental expenses are then "capitalized" together with the cost price of the realty and building materials. In future years such costs are amortized or depreciated annually and deducted from current income, or, if the asset be sold, such incidental costs are added to the purchase price base and decrease the ultimate profit of the completed capital transaction. In other words, the expense is at some time reflected in a reduction of income.

If, however, no capital transaction has resulted, that is to say, the expenditures were for naught, and no future capital event could ever occur in which there could be reflection and recognition of these expenses, then there was no capital transaction to which the expenses could append.[3]

It is true the stockholders suffered a loss. They always do when the corporation suffers a loss. But the loss here involved is, we think, quite clearly one for which only the corporation may make a deduction from its taxable income. It had stock in its treasury which was worth to it, $45,000. The stock was its property for which it could get $45,000. That stock was lost to it. The broker received it and became liable for its conversion to the taxpayer for $45,000 in cash or in services. It paid taxpayer no part of the consideration. Its bankruptcy made collection impossible. Hence the taxpayer suffered a loss which it, not the stockholders, should claim.

What has been said would necessarily lead to an affirmance of the judgment were it not for the failure to reduce plaintiff's loss by the amount it could have recovered from the bankrupt or the estate of the bankrupt. The bankrupt estate paid a five per cent. dividend. Plaintiff did not file its claim. Its failure to do so is unexplained save that the estate was small. Its duty to reduce its loss was clear. Its deductible loss was that which it suffered after the sum which it could have received or obtained from the debtor had been deducted.

The judgment is therefore reversed with directions to enter one in accordance with the views here expressed. The costs of this appeal shall be shared equally.

---

[3] The subject is treated in Mertens' Law of Federal Income Taxation, Secs. 28–39.