OPINION. Arundell, Judge: In our findings, we have set forth in considerable detail the various and involved steps incident to the closing, reopening, and reorganizing of a New York state bank. Petitioner was required to and did pay to the bank during the taxable year before us $137,-187.35, and the deductibility of this item under the taxing statutes is one of the questions posed in this proceeding. The petitioner urges the deduction of the sum as an ordinary and necessary expense or, in the alternative, as an ordinary business loss, and the respondent contends that the sum should be capitalized as an additional cost of the shares petitioner had owned in the bank. We think it must now be accepted as settled law that the so-called double liability assessment which is placed by law on the owners of bank stock must be treated as an additional cost of the stock to the stockholder, First Nat. Bank in Wichita v. Commissioner, 46 F. 2d 283, affirming 16 B. T. A. 1399; Porter Property Trustees, Ltd., 42 B. T. A. 681, affirmed without discussion of this point, 130 F. 2d 276; Regulations 111, sec. 29.24-2; see also B. Estes Vaughan, 17 B. T. A. 620; S. M. 4510, IV-2 C. B. 185. But no formal assessment as such was made and petitioner’s chief stockholder, Adam, took title to the bank shares and assumed any liability that might arise from the bank’s condition, subject only to petitioner’s agreement to reimburse Adam should the occasion ever arise. In the posture of this case, we do not think there arose a situation which gave rise to an accrued liability on the part of the petitioner until the rights of the parties were determined as a result of extended litigation and a compromise agreement, all of which occurred during the taxable year. During this taxable year, the entire matter was resolved and a plan worked out to settle all the bank’s problems, together with those of its depositors and stockholders. The petitioner’s shares in the bank were declared valueless by the superintendent of the Banking Department of the State of New York and the certificates were canceled at the time the petitioner’s liability to pay the $137,187.35 accrued. Hence, when petitioner paid the sum, which was undoubtedly in the nature of or in lieu of an assessment, it suffered a complete out-of-pocket loss for petitioner’s stockholdings in the bank had then ceased to exist. We think it follows, when the sum was paid, petitioner suffered a deductible loss. It is true that had the shares continued to have value and remained in petitioner’s ownership, the sum of $137,187.35 would have been added to their cost and should the shares subsequently have become worthless, then their loss would have been a capital loss, limited by- section 23 (g) of the Internal Revenue Code, but the settlement brought about under the plan left no ownership in the petitioner of the shares it had theretofore owned and the sum was, in our opinion, deductible as a loss under section 23 (f) of the Code. I. T. 3351, 1940-1 C. B. 87; see George H. Stanton, 36 B. T. A. 112; Jamieson Associates, Inc., 37 B. T. A. 92, reversed on other points sub nom, Seaside Improvement Co. v. Commissioner, 105 F. 2d 990, certiorari denied 308 U. S. 618; Henry Adamson, 17 B. T. A. 17; Marjorie Fleming Lloyd-Smith, 40 B. T. A. 214, affirmed without discussion of this point, 116 F. 2d 642, certiorari denied 313 U. S. 588; I. T. 2843, XIV-1 C. B. 77; I. T. 2617, XI-1 C. B. 29; cf. Champlain Coach Lines v. Commissioner, 138 F. 2d 904; Messenger Corporation v. Smith, 136 F. 2d 172. It should be pointed out in passing that section 23 (g) provides that if any securities, including shares of stock in a corporation or rights to subscribe for or to receive such shares shall become worthless during the taxable year, the loss resulting therefrom shall be considered as a loss from a sale or exchange of capital assets and such loss shall be allowed only to the extent provided in section 117. As wé have heretofore pointed out, the immediate loss with which we are here concerned does not fall in the category of a share of stock or a right to subscribe for such share, but arises from the payment of money incident to a prior ownership of shares of stock. The conclusion we have reached with reference to the treatment of the $137,187.35 makes unnecessary a consideration of petitioner’s argument that the sum paid was deductible as an ordinary and necessary expense. From what we have already said, it follows that the petitioner’s surrender of certificates of withheld deposits gave rise to a further loss in the sum of $2,767.47, deductible under section 23 (f), since pursuant to the plan this surrender was an additional step in compromise of the same judgment or liability for which the $137,187.35 was paid. A further issue arises with reference to the loss suffered incident to the old shares that petitioner had held in the bank. Petitioner’s cost of those shares is set forth in our findings and is in the amount of $205,700. The shares became worthless and were canceled by order of the superintendent of the Banking Department of New York State in 1943. During the taxable year 1944, the liabilities of the bank were in excess of its assets, plus the $175,000 carried in the bank’s capital stock account. Although this financial condition prevailed for some years prior to the taxable year 1944, it was not until the taxable year 1944 that the shares were canceled and declared worthless by the superintendent of the Banking Department. Prior to that event, the bank was operating occasionally at a profit, the petitioner remained a stockholder entitled to share in the success of the enterprise, and the stock was not worthless. The cancellation of the shares of stock was not a mere recapitalization formality such as where old stockholders surrender old stock for new stock without the intervention of a new group of stockholders or the payment of consideration for the new stock. The plan was designed and carried out in the maimer authorized by subdivision 8 of section 609[1] of the New York Banking Laws, and under its terms the old certificates were canceled and, as stated in the banking statute, “such stock certificates shall be null and void for all purposes and the rights of the holders thereunder shall cease .and determine.” Under the terms of the instant plan, new shares in the bank were to be issued to the holders of certificates of withheld deposits who were to become the stockholders of the bank. It is true that under the terms of the plan the new shares received by the depositors were to be transferred by them to petitioner in exchange for merchandise certificates issued by petitioner, but this arrangement was a purchase by petitioner, on a value basis of these new shares and the acquisition of the new shares in no wise resulted from petitioner’s previous ownership of the old shares. It is our view that the cancellation and voiding of the old stock during the taxable year 1944 was a positive, definitive event, marking the point at which petitioner’s ownership in the bank was extinguished and the old shares representing that ownership became worthless. The petitioner seeks to deduct its basis for these old shares as an ordinary loss under section 23 (g) (4). Paragraph (2) of that section provides that if securities that are capital assets become worthless, the loss shall be a capital loss. Paragraph (4) provides that for the purposes of paragraph (2), stock in a corporation “affiliated” with the taxpayer is not a capital asset. Paragraph (4) further provides that a corporation is “affiliated” with the taxpayer only if at least 95 per cent of each class of its stock is owned directly by the taxpayer (which must be a domestic corporation) and, in addition, more than 90 per cent of the aggregate of the corporation’s gross income for all taxable years must have been from sources other than interest and certain other types of income not relevant here. The crucial provision here is the requirement that 90 per cent of the income be from sources other than interest since the bank is the corporation which the petitioner seeks to qualify as an “affiliated” corporation within the meaning of section 23 (g) (4). The petitioner does not deny that more than 90 per cent of the aggregate of the bank’s income was from interest, and concedes on brief that “virtually all of any bank’s income is derived from interest.” However, the petitioner refers to the legislative history of section 23 (g) in an attempt to establish that in enacting that section Congress did not intend to include an operating bank within the exclusionary limitation of paragraph (4). The meaning of this limitation is clear and plain. It is distinctly expressed in language that is easily understood and contains no ambiguities or incompleteness. Under these circumstances, we have no authority to look to its legislative history to determine its purview. We have no choice but to follow the plain meaning of the provision. Caminetti v. United States, 242 U. S. 470; 50 Am. Jur., Statutes, § 22. We, therefore, hold that the bank is not an “affiliated” corporation of the petitioner within the meaning of section 23 (g) (4) and petitioner may not deduct the loss as an ordinary loss under that section. Finally, we come to the question whether petitioner may deduct or must capitalize the various sums totaling $16,534.78 which it paid in the taxable year 1944 for legal fees and expenses. The liability to pay these sums accrued during the taxable year 1944. We agree with the parties that the treatment of the sought deduction is dependent upon the nature and purpose of the litigation or circumstances under which they were incurred and, further, that legal expenses incurred in the acquisition of property must be capitalized. S. Cupples Scudder, Executor, 22 B. T. A. 1294; Safety Tube Corporation v. Commissioner, 168 F. 2d 787; Virginia Hansen Vincent, 18 T. C. 339. Included in the total sought to be deducted in connection with the litigation is the sum of $2,854.28 which was paid by petitioner to counsel in the defense of the action which resulted in petitioner being required to pay the sum of $137,187.35 which we have already discussed in some detail. We think this amount is deductible either as an ordinary and necessary expense under section 23 (a) or as a loss under section 23 (f). Also included in the fees sought to be deducted is one of $2,500, a portion of which was in connection with the setting up of the plan under which petitioner later acquired new shares in the bank and a portion of which was paid in defense of the bank’s effort to collect from petitioner the liability resulting from its previous ownership of the old shares. In the absence of a definite allocation by the parties, we have allocated, under the principle of Cohan v. Commissioner, 39 F. 2d 540, one-half of the fee, or $1,250, as incident to the acquisition of the new shares of stock and the remaining $1,250 to defending the claim against petitioner incident to its ownership of the old shares. It follows that one-half of the fee should be capitalized and the remaining one-half is deductible either as an ordinary and necessary expense or as a loss. There remains the treatment of the legal expenses in the amount of $11,180.50, which was the sum paid by petitioner to counsel for the bank. Normally a fee paid by one taxpayer for services rendered to another taxpayer would not be deductible, but it appears in this case that the sum was paid by petitioner as a part of the over-all settlement between petitioner and the bank, and while the sum was paid directly to counsel it was, in fact, a payment to the bank in settlement of the bank’s judgment against petitioner. Therefore, for reasons set forth in our discussion of the first issue, it is deductible as an ordinary loss under section 23 (f). Reviewed by the Court. Decision will be entered under Bule 50. Section 609, subdivision 8, of the New York Banking Law, Bets forth the steps that must be tak n in a plan for the retirement of certificates of withheld deposits. One of the steps set forth in subparagraph (1) of this subdivision is the entering of an “order declaring that such plan shall be effective upon the filing by the superintendent in the office of the county clerk of the certificate required to be filed pursuant to subparagraph (k) * '* Subparagraph (i) then continues: “Within 10 days after the entering of such order, the superintendent shall issue an order * * * directing that such bank * * * shall forthwith make good the impairment of its capital, upon receipt of such order, the directors of the bank * « * ighall give notice to each stockholder of such requisition and of the amount of the assessment he must pay, which amount shall be the aggregate par value of his shares. * * * all outstanding stock certificates of the bank * * * shall be cancelled of record not less than 30 days after notice of assessment is given to stockholders as herein provided, and thereupon such stock certificates shall be null and void for all purposes and the rights of the holders thereunder shall cease and determine * ■* Pursuant to this subparagraph, however, the old stockholders are given an opportunity to acquire new shares. If a stockholder pays the full amount of the assessment, he shall receive “new stock in the amount to which he would be entitled if he held certificates issued by such bank * * * pursuant to the provisions of this section in an aggregate unpaid principal and interest amount equal to the assessment so paid.”