SAFETY TUBE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5517. Promulgated April 2, 1947.

*Garnett S. Andrews, Esq.*, for the petitioner.
*S. Earl Heilman, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner has determined deficiencies against petitioner for the year 1940 of $1,138.23 in income tax and $9,221.34 in personal holding company surtax, plus a 25 per cent penalty amounting to $2,305.34 for failure to file a personal holding company return on Form 1120H. The deficiencies are based upon two adjustments which the Commissioner made on the income tax return filed by petitioner and on the determination by the Commissioner that petitioner was a personal holding company. Adjustment (b) is in petitioner's favor and allows it a deduction of $1,176.47 for amortization of a patent which it owned. Petitioner does not contest the correctness of this adjustment. Adjustment (a) made by the respondent is explained in his deficiency notice as follows:

(a) It is held that legal expenses amounting to $8,107.35, incurred by you in defending and perfecting title to your property, constitute a part of the cost of such property, and are not deductible as ordinary and necessary expenses. Section 19.24–2 of Regulations 103.

The petitioner contests by appropriate assignments of error the foregoing adjustment and also contests the correctness of respondent in determining that petitioner was liable for a personal holding company surtax and for a 25 per cent penalty.

The facts are all stipulated, and we adopt them as our findings of fact. They may be summarized as follows:

Petitioner, a Delaware corporation, with principal office at Nashville, Tennessee, was organized on September 8, 1939, with an authorized capital stock of 200,000 no par value shares, to take over a patent and other assets held by Garnett S. Andrews as trustee. This patent was granted in 1933 to Constantine Bradley on an improvement in

puncture-healing inner tubes for pneumatic tires. After making the invention in 1929, Bradley solicited subscriptions for stock in a corporation to be formed for the manufacture and sale of the improved tubes, and issued to each subscriber a certificate acknowledging payment for the future shares and reciting an understanding that the money received would be used in perfecting and marketing the tube. Bradley died in December 1934, and thereupon Andrews took charge of the enterprise by agreement of the subscribers. Experimental work in perfecting the tube was conducted until late in 1937 and involved expenditures of $20,000 provided by the share subscribers. On March 30, 1938, Andrews granted Sears, Roebuck & Co. the exclusive right to sell the tubes for replacement purposes during a period of two years, under a contract whereby a manufacturer would be licensed to produce them under the patent, pay royalties to Andrews, and sell the tubes to Sears, Roebuck & Co. or customers designated by the latter. The Cupples Co. of St. Louis, Missouri, was selected by Sears, Roebuck & Co., began manufacture in 1938, and remitted royalties to Andrews, who deposited them in a bank account bearing his name as trustee.

On August 16, 1939, Benjamin C. Seaton filed suit against Bradley's widow, Andrews, and others, alleging that in or before 1927 he had been granted three patents for improvements on inner tubes for vehicle tires, and had employed Bradley to sell interests therein under contracts which, *inter alia*, provided that Seaton "sells, assigns and sets over" to the purchaser:

* * * the right to share in and to receive ———% of all proceeds in the form of money or otherwise which may be derived from the sale of rights into or under all of said Letters Patent, or any one of the same, it being understood and agreed that the title in and to said Letters Patent, and to each of them remains in said Seaton.

4. It is further understood and agreed by said parties that should any improvements be made by either party on any of the articles forming the subject of said Letters Patent, or any of them, and whether said improvements are patented or not, the same shall be subject to the provisions of this contract in regard to sharing in the proceeds of the sale to others of rights thereto.

The complaint further alleges that such interests were sold to various parties, "that a like assignment of interest containing the paragraph quoted above was made to said Constantine Bradley and his wife, Willie A. Bradley * * *," and that Bradley's patent was an improvement on Seaton's patents. The complainant then prays that Andrews be enjoined from disposing of the Bradley patent and any funds paid him in connection therewith; that Sears, Roebuck & Co. be required to make disclosure of the contract and funds paid; and that a decree be entered declaring:

* * * that complainant is the rightful owner of said Bradley patent number 1924148 and the rightful owner of all funds realized and paid to defend-

ant, Garnett S. Andrews, by said Sears, Roebuck & Company, * * * and the beneficial and rightful owner of said Sears, Roebuck & Company contract.

On November 29, 1939, the complaint was amended to pray in the alternative:

* * * that a decree be entered in favor of complainant individually and in favor of complainant for the use and benefit of all persons who purchased assignments of interests from him, holding that they are entitled to a percentage of the funds realized from marketing said Bradley patent * * *.

On November 3, 1939, petitioner, which had qualified to do business in Tennessee, was joined as a party defendant after filing a petition which set forth that Andrews had assigned to it the patent, contract, and royalties upon its express agreement:

* * * to immediately qualify to do business under the laws of the State of Tennessee and to intervene in this cause, to the end that this Petitioner might be subject to the orders and decrees of this Court, and to the end that all of said assets received by this Petitioner from defendant Andrews would remain under the jurisdiction of Your Honor's Court and be subject to all orders and decrees of Your Honor * * *.

The Safety Tube Corporation's petition for permission to intervene concluded with the following prayer:

1. That it [petitioner] be allowed to intervene and become a party defendant to this cause, and that it be permitted to file its answer herewith tendered to the bill filed herein as amended.

* * * * * * *

The court thereupon entered an order:

That Safety Tube Corporation be made a party defendant to the bill herein, as prayed in its petition filed herein September 16, 1939; and that it be given leave to file the answer tendered with the said petition, or to withdraw the same and make such other or further defense as it may deem advisable.

The answer which petitioner filed consisted of a demurrer to the complaint as showing no cause of action. This demurrer was overruled on December 21, 1939, but on appeal the Supreme Court of Tennessee sustained it:

* * * insofar as it is directed to that part of the fourth prayer for relief, which prays that Seaton be declared to be the rightful owner of the Bradley patent, No. 1,924,148.

The Supreme Court of Tennessee on May 18, 1940, rendered an opinion on the three defendants' demurrers, in which it found:

* * * that this [referring to the Seaton suit] is a suit in a state court seeking to hold one, and those claiming under him, liable as a constructive trustee, for an alleged breach of trust and confidence, and to compel them to render an account for unjust enrichment.

The court also found:

We, therefore, conclude that the facts, well pleaded in the bill, are sufficient to create a constructive trust as against Bradley and those claiming through him by immediate or ultimate assignment.

On March 21, 1940, the supreme court entered a decree in which it sustained the petitioner's demurrer to that part of Seaton's bill wherein Seaton prayed that he be declared the rightful owner of the Bradley patent. This removed from the litigation all question as to petitioner's ownership of the Bradley patent, No. 1,924,148. The supreme court sent the case back for trial on the remainder of the issues raised by the bill of complaint. After trial of the case early in 1942, the jury failed to agree, and on September 17, 1942, a decree dismissing the complaint was entered by consent of the parties. Just what kind of a settlement was reached is not shown by the record.

On September 8, 1939, while the suit was pending, Andrews conveyed to the petitioner, just organized, all assets held by him as trustee, including the patent and the royalties received, which at that time amounted to $17,383.06 after deduction of expenses incurred. He filed fiduciary income tax returns reporting such royalties up to the time of the transfer. For 1940 petitioner received and reported a gross income of $14,910.96, consisting entirely of royalties. On its income tax return petitioner took a deduction of $558.81 for taxes, and miscellaneous deductions of $9,676.21, including legal expenses of $8,107.35. The Commissioner in his determination of the deficiencies allowed all the deductions except legal expenses of $8,107.35. Petitioner, in making defense in the Seaton suit against Bradley and others during the year 1940, employed Thomas H. Malone, Andrew Ewing, and Garnett S. Andrews, all practicing attorneys of Nashville, Tennessee. The legal expenses so paid by petitioner in 1940 were as follows:

| | |
|---|---:|
| Thomas H. Malone | $2,500.00 |
| Andrew Ewing | 2,500.00 |
| Garnett S. Andrews | 3,000.00 |
| Cost of taking proof, securing exhibits, etc. | 107.35 |
| Total | 8,107.35 |

Petitioner filed its return on the basis of cash receipts and disbursements. When petitioner filed its income tax return for 1940 it attached a letter, signed by its attorney, Garnett S. Andrews, and addressed to the Collector of Internal Revenue, Nashville, Tennessee, which reads in part as follows:

The information on the enclosed blank would indicate that the Safety Tube Corporation is a holding company, since its entire revenue is derived from royalties.

The Safety Tube Corporation was chartered not only to own patents and issue licenses thereunder, but also "To manufacture, buy, sell, and generally deal in any article, product or commodity as the result of or through the use of any such inventions * * *." The Company has not been able to either manufacture or sell the pneumatic inner tubes protected by the letters patent which were assigned to it, by reason of the fact that a suit was instituted in Part Two of the Chancery Court at Nashville, Tennessee, styled "Benjamin C. Seaton vs.

Willie A. Bradley, et als.," on August 16, 1939, some 23 days before the corporation was chartered, the complainant in said suit claiming all of the assets, including patents, licenses issued thereunder and royalties collected, and as a result said corporation has been unable to manufacture, sell, or otherwise proceed with the promotion of the manufacture and sale of said tubes. In view of the foregoing we respectfully insist that the Safety Tube Corporation should not be classified as a holding company.

As a result of said litigation the corporation has also been unable to declare dividends, and will not be in position to declare dividends until said litigation is finally determined.

Petitioner received no income in 1940 other than royalties from the manufacture of tubes under the Bradley patent. While 130 persons subscribed for petitioner's stock, certificates for 51 per cent of its shares are due and will be issued to only 4 persons.

The only activity of the Safety Tube Corporation pending the Seaton suit was receiving royalties, defending said litigation, and paying taxes. It did not file a personal holding company return on Form 1120H for the taxable year ended December 31, 1940. From the facts which have been stipulated, we find that petitioner's failure to file a personal holding company return was because it was advised by its counsel that it should not be classified as a personal holding company and was not subject to the personal holding company surtax. It follows, therefore, that petitioner's failure to file a personal holding company return was due to reasonable cause and was not due to willful neglect.

Petitioner, by its assignments of error, has raised three issues:

(1) That the $8,107.35 which it paid out as legal expenses in 1940 were current operating expenses and were therefore deductible items in arriving at petitioner's net income for that year.

(2) That the royalties which it received in 1940 were received and held by it as constructive trustee and the failure to pay such income to its stockholders during that year does not render it liable for personal holding company surtax as provided in section 500 of the Internal Revenue Code.

(3) That the Commissioner erred in imposing a delinquency penalty of 25 per cent because petitioner's failure to file a personal holding company return on Form 1120H was due to reasonable cause and and not to willful neglect.

We discuss these respective issues in their order.

(1) The Commissioner defends his disallowance of the deduction of the $8,107.35 legal expenses on the ground that the expenditures were made in defense of title or right to property and, therefore, constitute a part of the cost of such property and represent a capital investment rather than a business expense. It is well settled that legal expenditures incurred in defense or protection of title are capi-

tal in nature and nondeductible. *Bowers* v. *Lumpkin*, 140 Fed. (2d) 927; certiorari denied, 322 U. S. 88; *Jones' Estate* v. *Commissioner*, 127 Fed. (2d) 231; *Brawner* v. *Burnet*, 63 Fed. (2d) 129; *Murphy Oil Co.* v. *Burnet*, 55 Fed. (2d) 17; affirmed on another point, 287 U. S. 299.

Petitioner argues, however, that this principle is not applicable here because the litigation involved the earnings of the business, not its capital assets, and, hence, the fees and legal expenses were necessary to retain income. It relies on *Kornhauser* v. *United States*, 276 U. S. 145, wherein the Court upheld the deduction of attorneys' fees paid in defense of an action which the taxpayer's former partner brought for an accounting of moneys collected by the partnership.

In attempting to bring its payments within the scope of the *Kornhauser* case and other cases which have followed it, petitioner is at pains to stress that it was defending a claim against the income produced by its business and that Seaton's claim of title to the patent was removed in 1939 by decision of the Tennessee Supreme Court sustaining the demurrer as to the ownership of the Bradley patent. As the fees covered legal services rendered in connection with the demurrer, as well as other services, we can not agree that defense of title to the patent was not involved. But, quite apart from this item of the complaint, we are of opinion that the suit involved primarily rights of a capital character and that the accounting for royalties, demanded in the complaint, was only a corollary of the determination of those rights, applicable not only to 1940, but equally to prior and subsequent years. Seaton claimed for himself and associates a participating interest in petitioner's commercial use of the patent. This claim and the expenses incurred in resisting it bore no special relation to 1940 or any other year. Seaton demanded part or all of the earnings of the business for all years, a right in or to the income-producing asset that petitioner resisted, not a claim against specific income therefrom.

We are of opinion that the facts here presented are indistinguishable from those considered in *Moynier* v. *Welch*, 97 Fed. (2d) 471, wherein the taxpayer's income consisted solely of royalties paid it under an oil lease.

\* \* \* The producing oil company sued to have settled whether it should pay the provided royalties wholly to plaintiff or divide it with others, who owned other lots in the same tract. The others claimed that the lease contemplated a division of the royalties.

In defending his exclusive right to them, the taxpayer incurred and paid legal fees which he sought unsuccessfully to deduct as business expenses. The court held that:

\* \* \* Attorney fees and litigation costs in such circumstances are capital expenditures and are not deductible. Such expenditures were not "ordinary

and necessary expenses paid * * * in carrying on any trade or business." * * *

The payment of the attorney fees and litigation expenses is as much of a capital expenditure in this case as it was in *Murphy Oil Co.* v. *Burnet*, 9 Cir., 55 F. 2d 17, 26 * * *.

See also *Farmer* v. *Commissioner*, 126 Fed. (2d) 542; *James C. Coughlin*, 3 T. C. 420; *Albert E. Schwabacher*, 43 B. T. A. 1177; affd., 132 Fed. (2d) 516; *Porter Royalty Pool, Inc.*, 7 T. C. 685. In conformity with these decisions, we held that the legal expenses of $8,107.35 are not deductible.

(2) We next take up and decide issue 2. The Commissioner determined that petitioner was a personal holding company in 1940 and as such was subject to the surtax imposed by section 500 of the Internal Revenue Code. By section 501 a personal holding company is defined to include any corporation which derives at least 80 per cent of its gross income for the taxable year from royalties, where more than 50 per cent in value of its outstanding stock is owned directly or indirectly by or for not more than five individuals. It is stipulated that petitioner's entire income consisted of royalties and that certificates for 51 per cent of its shares are due and will be issued to four persons. Obviously, petitioner falls literally within the definition, and no contention is made that it is not a personal holding company. It contends, however, that, "since all income received by it during the year 1940 was received and held by it as constructive trustee, its failure to pay such income to its stockholders during that year does not render it liable for personal holding company surtax."

By section 500 the surtax is imposed upon "the undistributed subchapter A net income," which is defined by section 505 as net income, decreased by certain deductions and adjustments set forth in sections 504 and 505. For petitioner to succeed in its contention, it must establish that the royalties fall within one of the specified deductions. In argument, it has not invoked or even referred to any specific subsection, but cites and relies on *Knight Newspapers* v. *Commissioner*, 143 Fed. (2d) 1007, as controlling. In that case a personal holding company received in 1939 a large dividend on common stock declared by its subsidiary. In 1940 this dividend was rescinded because state law and the terms of the subsidiary's preferred shares forbade payment of a dividend under the subsidiary's existing financial condition. As payment had been constructively effected by a credit of the amount on the subsidiary's indebtedness account with the parent taxpayer, refund was made by a canceling debit entry in 1940. In holding that the dividend should not be included in the parent's undistributed subchapter A net income subject to surtax in 1939, the court reasoned that, as the dividend had originally been declared under a mistake of fact, which was recognized and corrected

with the concurrence of all parties concerned, equity impressed upon the amount so received a constructive trust and the parent held it as trustee. The respondent in that proceeding, as here, relied upon *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *National City Bank of New York* v. *Helvering*, 98 Fed. (2d) 93; and similar cases holding recipients taxable on amounts received by them under a claim of right which was in dispute and the subject of litigation. The court distinguished these cases on the grounds that in them:

* * * the income was actually paid over and received by the taxpayers, and was never refunded, except in the *National City Bank* case, where the funds were returned under compulsion. * * * Here, there was a mistake on the part of the directors, resulting in violation of the rights of preferred stockholders. No claim of right resulting from the directors' actions was ever asserted by anyone. The Government was not compelled to take sides in a private controversy in order to establish the actual facts.

Obviously those grounds of distinction are not available to petitioner. It received the royalties under a claim of right, which it defended in court; there was no recognized mistake, but a dispute with Seaton, who asserted an adverse claim. The controversy was, in fact, settled by compromise in a subsequent year, the terms of which are not in evidence, and hence it is not established whether petitioner retained or paid over the royalties to Seaton or which party had the just claim. If in 1942 petitioner paid over any of the $14,910.96 royalties which it received in 1940 to Seaton, it would be entitled to a deduction for such payment in the year when made, under the doctrine of *North American Oil Consolidated, supra.*

Petitioner urges that it, too, was a constructive trustee and received no income in 1940 "to which it had unrestricted title, from which it could have paid dividends," and that it held the royalties subject to court order and *pendente lite*. We are not convinced by the record or arguments that petitioner was under any restriction as to the disposition of its income. On the contrary it affirmatively appears that it did dispose of a part in the payment of attorney fees and other expenses, and that all the property in controversy was transferred to it after the suit began. It has shown no impounding of its funds and no order restraining its free use of them, and the Tennessee Supreme Court's opinion disposing of the demurrer which petitioner stresses, relates to the sufficiency of allegations in the bill of complaint and does not decide any substantive issue. Whatever apprehensions or anticipations about the outcome of the suit may have been entertained by petitioner's officers, they held and partly used the royalties under a claim of right, which was not renounced by the petitioner in 1940, or, so far as shown, in any other year. While an eventual adverse decision might have required petitioner at some future time to account for and pay the equivalent of the royalties received by it to Sea-

ton, that possibility imposed no more restriction on its use of the royalties as received than is normally true of income which is the subject of litigation. Such income has been consistently held subject to income tax, *North American Oil Consolidated* v. *Burnet, supra,* and as petitioner's royalties are not shown to have been received and held by it under a trust or other circumstances bringing them within the deductions and adjustments provided by sections 504 and 505, we sustain the Commissioner's determination in including them in income subject to surtax.

Petitioner, in its brief, relies upon the doctrine of *lis pendens.* But the doctrine of *lis pendens* does not of itself destroy the alienability of the property or otherwise restrict its use; it merely causes the purchaser *pendente lite* to hold that property as did his transferor, subject to the final decree of the court. This principle has been stated as follows:

According to the generally accepted rule, the doctrine of lis pendens does not annul rights acquired pendente lite but merely renders them subordinate to the rights of the parties to the action as determined by the judgment or decree, * * *. *There is no prohibition of sales or transfers during the pendency of the suit, and in this respect the doctrine differs from the situation arising when an injunction issues preventing transfers pending litigation.* [Italics supplied.]

38 C. J., *Lis Pendens,* sec. 109, p. 63.

In this proceeding no injunction has been issued restricting petitioner's right to dispose of the royalties which it received in any manner that it chose. It is no doubt true that on account of the pending litigation petitioner's officers did not think it was prudent to pay out the royalties received as dividends to its stockholders, and their failure to do so results in a real hardship under the facts of the instant case. However, we feel that we have no power to change the law as written. See *St. Regis Paper Co.* v. *Higgins,* 157 Fed. (2d) 884. The facts which we have before us seem to bring petitioner within the provisions of the personal holding company surtax law. Congress has provided how personal holding companies shall be taxed, and if relief is to be given in such circumstances as petitioner finds itself, Congress will have to give it. Cf. *Cedarburg Canning Co.* v. *Commissioner,* 149 Fed. (2d) 526, affirming Tax Court memorandum opinion.

(3) The third and last issue concerns the imposition by the Commissioner of a 25 per cent penalty because petitioner did not file a personal holding tax return on Form 1120H. Petitioner contends that its failure to file such a return was due to reasonable cause and not to willful neglect. On this issue we think the law and the facts are in favor of petitioner. The facts which have been stipulated seem to show clearly that petitioner in good faith believed that it was not liable for any personal holding company surtax and that its counsel,

Garnett S. Andrews, so advised petitioner, and that, acting under such advice, petitioner did not file a personal holding company return. The fact that Andrews' judgment turns out to be wrong, according to the decision we have herein made, does not justify the imposition of a delinquency penalty. Advice of reputable counsel that a taxpayer was not liable for the tax has been held to constitute reasonable cause for failure to file a return on time when it was accompanied by other circumstances showing the taxpayer's good faith. *Dayton Bronze Bearing Co.* v. *Gilligan*, 281 Fed. 709; *Adelaide Park Land*, 25 B. T. A. 211; *Agricultural Securities Corporation*, 39 B. T. A. 1103; affirmed on another point, 116 Fed. (2d) 800; *C. R. Lindback Foundation*, 4 T. C. 652. Cf. *Hugh Smith, Inc.*, 8 T. C. 660. On this issue we sustain petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

JOHNSON, *J.*, dissenting: I am unable to agree with the decision reached by a majority of the Court in respect of the second issue. The penalizing rate of tax imposed by section 500 on the undistributed income of a personal holding company was obviously intended to force such a corporation to distribute its profits so that they would be subject to tax as income of the shareholders. *General Securities Co.* v. *Commissioner*, 123 Fed. (2d) 192; *Pembroke Realty & Securities Corporation* v. *Commissioner*, 122 Fed. (2d) 252. It is to me inconceivable that Congress intended the imposition of such a tax upon income which a corporation had a legal justification and a moral duty to retain. In the prevailing opinion stress is placed on the absence of a specific court order restraining petitioner in the use of its funds and on the literal wording of section 504, defining undistributed subchapter A net income. The rationale adopted may well be applicable to the ordinary income tax, which was the subject of consideration in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, but in the construction of a statute imposing a penalizing surtax, the same inflexibility is not demanded, and in *Knight Newspapers, Inc.* v. *Commissioner*, 143 Fed. (2d) 1007, the Circuit Court of Appeals for the Sixth Circuit, in a well considered opinion, refused to apply it, saying:

\* \* \* It is within the power of the court to declare a thing which is within the letter of the statute, not governed by the statute, because not within its spirit or the intention of its makers. \* \* \*

In that case the taxpayer, a personal holding company, received in 1939 a large dividend on the common stock of its subsidiary. Because state law and the terms of the subsidiary's preferred shares forbade payment of a dividend under circumstances existing, the dividend was

rescinded in 1940. As payment had been made by a credit entry of the amount on the subsidiary's indebtedness to the taxpayer, refund was effected by a canceling debit entry on the books in 1940. The Commissioner sought to treat the dividend as undistributed profits of 1939, subject to the surtax imposed by section 500. In holding that it should not be so treated, the Circuit Court of Appeals, invoking the equitable doctrine of constructive trusts to prevent injustice, held that the taxpayer was a constructive trustee in its relation to the dividend, and adopted the view that:

* * * It certainly was not within the intention of the Congress to treat contingent gains as income subjecting a holding company, not organized for tax evasion purposes, to the severe penalties of the Act. * * *

Despite differences in facts, I believe that the same equitable principles there applied require a decision of this issue in petitioner's favor. Petitioner was not organized for tax evasion purposes, and when it acquired the patent and assets from Andrews, trustee, it did so with full knowledge that Andrews was acting for those who claimed an interest under assignment from Bradley or Bradley's wife, and that those interests were disputed in a pending suit by Seaton, who asserted an adverse claim to the whole. Petitioner became a constructive trustee of the type defined in Perry on Trusts and Trustees, vol. I, 7th Ed., p. 379:

§ 217. Another large class of constructive trusts arises from purchases or conveyances from trustees, or other persons holding a fiduciary relation to property. It is a universal rule, that if a man purchases property of a trustee, with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased. And even if he pays a valuable consideration, with notice of the equitable rights of a *third person,* he shall hold the property subject to the equitable interests of such person. * * * [Italics supplied.]

In deciding the issue raised on demurrer, the Supreme Court of Tennessee stated:

It must be borne in mind, however, that this is a suit in a state court seeking to hold one, and those claiming under him, liable as a constructive trustee, for an alleged breach of trust and confidence, and to compel them to render an account for unjust enrichment.

We, therefore, conclude that the facts, well pleaded in the bill, are sufficient to create a constructive trust as against Bradley and those claiming through him by immediate or ultimate assignment.

The relevance of the remarks of the Supreme Court of Tennessee is enhanced by the fact that in its petition to the court petitioner set forth that in accepting the transfer of the patent and assets from Andrews it agreed:

* * * to immediately qualify to do business under the laws of the State of Tennessee and to intervene in this cause, to the end that this Petitioner might

be subject to the orders and decrees of this Court, and to the end that all of said assets received by this Petitioner from defendant Andrews would remain under the jurisdiction of Your Honor's Court and be subject to all orders and decrees of Your Honor. * * *

If petitioner had distributed the royalties in its possession in 1940, it obviously would have deprived itself of the power to distribute them to Seaton and the claimants under him in case the court should later render a decision in Seaton's favor. Indeed it is not unreasonable to suppose that if petitioner had manifested an intent or made an attempt to dispose of them, Seaton could have procured a restraining order. I do not believe that its position should be deemed any less clear or the legal incidents of its duty less effective because it voluntarily held the royalties, as it had agreed to do, pending the court's decision as to the true owner. While true that it held them under a claim of right and reported them properly for ordinary income tax, the tax which it here resists results from its failure to distribute moneys which it was under an obligation to hold and which it had promised to hold, subject to the court's order. To impose a penalizing tax under the circumstances is to penalize good faith. Congress did not intend by section 500, *et seq.*, to bring about such a result, and for the reasons given in *Knight Newspapers, Inc.* v. *Commissioner*, *supra*, equity requires, in my opinion, that petitioner's position as a constructive trustee be recognized and respected by excluding the royalties received in 1940 from income. While legally petitioner held its assets under a claim of right, its tenure was at all times subject to an equitable obligation as constructive trustee to make distribution to the true owners. It lay within the province of the Tennessee Supreme Court to decide whether these were the claimants under Bradley or under Seaton, and, as the court had not decided, petitioner was in no position to know its duty. To refrain from making a distribution was its only proper course in the premises, and to penalize it for pursuing that course is, in my opinion, a grave injustice. The remarks of the Circuit Court of Appeals for the Fifth Circuit in *Hilpert* v. *Commissioner*, 151 Fed. (2d) 929, while referring to facts substantially different from those here considered, seem singularly applicable to the case at bar:

We agree with the dissenting opinion in the Tax Court that the Tax Court's holding seems to be entirely unrealistic. The appetite for taxes is not so voracious, the commands of the statute are not so inexorable, as to require the doing of an injustice when there is open another course that is more fully consonant with law and reason and which course, if followed, will lead neither to evasion by the taxpayer nor extortion by the Government.

ARUNDELL, ARNOLD, HILL, and HARLAN, *JJ.*, agree with this dissent.