WESTERN TRANSMISSION CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29490.  Promulgated July 30, 1952.

*John A. Buchanan, Esq.*, for the petitioner.
*John L. King, Esq.*, for the respondent.

820

[REDACTED]

## OPINION.

RICE, *Judge:* The first issue is whether petitioner is a personal holding company within the meaning of the applicable provisions of the Internal Revenue Code. Section 501 defines a personal holding company, and section 502 sets forth the items of gross income which constitute personal holding company income. In the instant case, we are primarily concerned with whether petitioner meets the gross income requirement contained in section 501 (a).[1]

We are also concerned with whether petitioner meets the stock ownership requirement of such section, but our findings show that petitioner's stock was owned during the taxable years by five individuals (two husbands and their wives, and one other individual). In view of this ownership of petitioner's stock, there can be no question but that the 50 per cent stock ownership requirement of the statute is fully met and satisfied; and we do not understand that petitioner contends otherwise.

The gross income requirement (that at least 80 per centum of the corporation's gross income for the taxable years is personal holding company income as defined in section 502) will be met if it can be said that the annual rentals received by petitioner under the lease, fall within the definition contained in section 502. This is true for the

---

[1] SEC. 501. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this subchapter and chapter 1, the term "personal holding company" means any corporation if—

    (1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; but if * * * ; and

    (2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

      *      *      *      *      *      *      *

reason that the gross income reported by petitioner for each of the taxable years was almost wholly rental income.

Section 502 provides that for the purposes of this subchapter the term "personal holding company income" means the portion of gross income which consists of the eight different items listed in subsections (a) to (h), inclusive. Subsection (f), the application of which is here in dispute, provides as follows:

(f) USE OF CORPORATION PROPERTY BY SHAREHOLDER.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case, where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.

In applying this subsection, it should be noted that subsection (g) specifically states that "rents," as provided for in (g), does not include amounts constituting personal holding company income under subsection (f).

Our findings show that the amounts received by petitioner from the partnership during the taxable years constituted "compensation for the use of, or right to use, property of the corporation * * *," as specified in the first part of section 502 (f). Such compensation is classified as personal holding company income under the statute in any case, where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property.

Petitioner contends that the compensation derived from the use of its property is not personal holding company income for the reason that in Michigan a partnership is an entity separate and apart from its partners, *Thurston* v. *Detroit Asphalt & Paving Co.*, 226 Mich. 205, 198 N. W. 345 (1924), and that under this rule no one individual or shareholder had the use of, or the right to use, the property that petitioner leased to the partnership. *Minnesota Mortuaries, Inc.*, 4 T. C. 280 (1944). The Federal District Court for the Eastern District of Michigan has recognized the rule announced in the *Thurston* case in *Schram* v. *Perkins*, 38 F. Supp. 404 (1941) and *Schram* v. *Wrubel*, 38 F. Supp. 357 (1940). Subsequent Michigan decisions which have reiterated the *Thurston* rule include *Chisholm* v. *Chisholm Construction Co.*, 298 Mich. 25, 298 N. W. 390 (1941), and *Lobato* v. *Paulino*, 304 Mich. 668, 8 N. W. (2d) 873 (1943).

Our decision in *Minnesota Mortuaries, Inc., supra*, involved a situation where two individuals owned all the stock of the taxpayer corporation, which derived more than 50 per cent of its income from leasing

certain of its buildings to an operating corporation, most of the shares of which were owned by the taxpayer. We held that the taxpayer was not a personal holding company under the applicable revenue statute. One of the reasons advanced for our holding was the well established general principles that an individual, as a stockholder of a corporation, has no right, title, or interest in, or right to use the corporate property, and that the acts of a corporation are not the acts of the stockholders of the corporation. Petitioner would have us apply the rule of the cited case to the instant facts and circumstances because of the Michigan rule that a partnership is an entity separate and apart from the partners.

We are unable to agree with petitioner's contentions. The same arguments under substantially similar facts have been rejected in a number of cases. The most recent case to come to our attention is *Randolph Products Co.* v. *Manning* (C. A. 3, 1949), 176 F. 2d 190. See also *Walnut Street Co.* v. *Glenn* (W. D. Ky., 1948), 83 F. Supp. 945; and *Furniture Finance Corporation*, 46 B. T. A. 240 (1942). Prior to the enactment of the personal holding company provisions, this and other courts had pointed out that "Unlike a corporation, a partnership does not for tax purposes exist separate and apart from the partners," *Alpin J. Cameron*, 8 B. T. A. 120, 125 (1927). In *J. H. Goadby Mills*, 3 B. T. A. 1245 (1926), we recognized the partnership as an entity for the purposes of accounting and determining the net income upon which the partners were taxed; and in *U. S.* v. *Coulby* (C. A. 6, 1919), 258 F. 27, the statement by the lower court that a partnership had no legal existence, aside from the members who compose it, was held to be too broad in view of the Bankruptcy Act, but to be correct when applied to the particular portion of the revenue statute before it. We also note that the *Minnesota Mortuaries, Inc.*, case, *supra*, upon which petitioner relies, states the rule, at p. 285, based upon our decision in *Furniture Finance Corporation*, *supra*, to be that "* * * a partnership is not considered an entity separate and apart from the individual partners, * * *."

The principal distinction between this case and the *Randolph Products Co.* case, *supra*, is that Michigan law differs from New Jersey law in that the latter, like the Internal Revenue Code, does not recognize a partnership as an entity separate and apart from the partners who compose it.[2] In our opinion such a distinction is immaterial for the reason that the Federal revenue statutes have their own criteria,[3] and their applicability is not dependent upon local Michigan

---

[2] A New York case to the same effect is *Commissioner* v. *Whitney* (C. A. 2, 1948), 169 F. 2d 562, certiorari denied 335 U. S. 892 (1948).

[3] *Burnet* v. *Harmel*, 287 U. S. 103, 110 (1932); *Weiss* v. *Wiener*, 279 U. S. 333, 337 (1929).

law. Since petitioner's shareholders were entitled to use the property of the corporation by virtue of the partnership lease, and since they held all the stock of the corporation and owned a majority of the interests in the partnership, the income of the corporation, derived almost exclusively from the rental of its property to the partnership, was personal holding company income within the meaning of section 502 (f).

Before passing to the other issue, it should be pointed out that none of the authorities cited by petitioner involved the application of a Federal revenue statute. The *Thurston* and *Chisholm* cases, *supra*, involved the Michigan Workmen's Compensation Act, the two *Schram* cases, *supra*, involved the bankruptcy laws, and the *Lobato* case, *supra*, involved the question of whether a partnership had been created. That the treatment of a partnership under the revenue laws is different from the treatment of a partnership in bankruptcy proceedings under the bankruptcy laws is demonstrated by the decision in *Jennings* v. *Commissioner* (C. A. 5, 1940), 110 F. 2d 945, and the *Schram* cases cited by petitioner.

The second question is whether petitioner has established that its failure to file personal holding company returns for the taxable years was due to reasonable cause. The facts show that petitioner stated upon its returns that it was not a personal holding company. Petitioner employed a certified public accountant to prepare its returns, and it had the advice of legal counsel on its tax problems. Petitioner's officers disclaimed knowledge of the revenue statutes and testified that the certified public accountant and the legal counsel were employed to handle such matters. The returns disclosed fully its source of income, and there is no suggestion or intimation that there was anything more than an honest mistake in judgment. We are of the opinion that petitioner was entitled to rely upon the judgment of its tax advisers, employed for that purpose, and that reasonable cause for their failure to file has been shown, and we so hold. *Reliance Factoring Corporation*, 15 T. C. 604 (1950).

In accordance with our determination that petitioner was a personal holding company during each of the taxable years, decision will be entered that there are deficiencies in personal holding company surtax for 1943, 1944, and 1945 in the respective amounts of $8,863.64, $1,224.20, and $3,212.11, but that there is no liability for the 25 per cent penalty for any taxable year as petitioner's failure to file personal holding company returns was due to reasonable cause and not due to willful neglect.

*Decision will be entered accordingly.*