*Decision will be entered under Rule 50.*

O. FALK'S DEPARTMENT STORE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANKLIN POLK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29244, 29245. Promulgated April 10, 1953.

*Cody Fowler, Esq.*, and *John J. Trenam, Esq.*, for the petitioners.
*Ralph V. Bradbury, Jr., Esq.*, for the respondent.

58

60

OPINION.

TURNER, *Judge:* The petitioners were holding companies in 1945 and subject to the surtax on personal holding companies under section 500 of the Internal Revenue Code, provided their income was personal holding company income to the extent prescribed by section 501 (a) (1) [1] and more than 50 per centum in value of their outstanding stock was owned, directly or indirectly, by or for not more than five individuals, as prescribed in section 501 (a) (2) [1] of the Code.

By section 503 (a) (1) of the Code,[2] it is provided that for the purpose of determining stock ownership under section 501 (a) (2), "stock owned, directly or indirectly, by or for a corporation * * * shall be considered as being owned proportionately by its shareholders." It is thus apparent that for the purposes of applying section 501 (a) (2), *supra*, the stock of Franklin Polk Corporation must be considered as having been owned by the stockholders of O. Falk's Department Store, Inc., and in the end, that means that the stock was owned proportionately by the four individual stockholders of the latter corporation. As to the applicability of section 501 (a) (2) to O. Falk's Department Store, Inc., we need only to note that it had four individual stockholders and that David A. Falk alone, owning directly 701 out of the 1,200 shares outstanding, owned more than 50 per cent in value of its outstanding stock.

It is equally clear, we think, that the income of each of the petitioners was personal holding company income to the extent required by section 501 (a) (1), *supra*. In section 502 (f),[3] it is provided that

---

[1] SEC. 501 DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this subchapter and chapter 1, the term "personal holding company" means any corporation if—

(1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; but if the corporation is a personal holding company with respect to any taxable year beginning after December 31, 1936, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company ; and

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 percentum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

[2] SEC. 503. STOCK OWNERSHIP.

(a) CONSTRUCTIVE OWNERSHIP.—For the purpose of determining whether a corporation is a personal holding company, insofar as such determination is based on stock ownership under section 501 (a) (2), section 502 (e), or section 502 (f)—

(1) STOCK NOT OWNED BY INDIVIDUAL.—Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries.

[3] SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of :

(f) USE OF CORPORATION PROPERTY BY SHAREHOLDER.—Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use,

the gross income of a corporation is personal holding company income if it consists of "amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement," and in that connection, it is to be noted that stock ownership under section 502 (f) is also to be determined under the provisions of section 503 (a) (1), *supra*. The facts show that in the case of each corporation substantially more than 80 per cent of its income consisted of rents received by the leasing and subleasing of its property; and further, that the use of the property by and through the leasing and subleasing arrangements was in a partnership composed of individuals who owned slightly more than 75 per cent of the stock of each corporation, either directly or within the meaning of section 503 (a) (1). It is argued, however, that, even so, the use of the corporate property was not in any individual who owned 25 per cent or more in value of the outstanding stock, since the sublease was to the partnership and not to a stockholder or stockholders individually. The question whether individual stockholders may be insulated against the applicability of section 502 (f) by taking the use of or right to use the corporate property in a partnership, of which they are members, is not now an open question in this Court, and the argument advanced must be resolved against the petitioners. *Western Transmission Co.*, 18 T. C. 818, and *Furniture Finance Corporation*, 46 B. T. A. 240. To the same effect is *Randolph Products Co.* v. *Manning*, 176 F. 2d 190.

With respect to O. Falk's Department Store, Inc., a further contention is made, which, if we understand it correctly, is that section 502 (f), *supra*, is not applicable, for the reason that the statute requires that the property which the individual stockholder has the right to use must have been the "property of the corporation," and that in this instance, the sublease under which O. Falk's Department Store, Inc., realized a substantial portion of its rent covered the property of Franklin Polk Corporation and not that of O. Falk's Department Store, Inc., although it is admitted that O. Falk's Department Store, Inc., did have a leasehold interest in the real estate subleased by it to the partnership. If, in the circumstances, O. Falk's Department Store, Inc., had seen fit to assign or convey that interest to the partnership and, in so far as the said real estate was concerned, had stepped

property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement.

completely out of the picture, there might well have been some force to the argument that with respect to the real estate, there was no right in the partnership or its members to use the property of O. Falk's Department Store, Inc. It is to be noted, however, that the said corporation did not convey or assign its leasehold interest in the real property which it held under lease from the Franklin Polk Corporation, but granted, by sublease, the use of the property to the partnership and its members. At the same time, its lease with Franklin Polk Corporation was modified so that for the remainder of the term thereof the rent payable under the lease was limited to a maximum of $75,000 per year, whereas it was entitled to receive from the partnership, under the sublease, a fixed rental of $30,000 a year, plus 4 per cent of the gross sales of the department store in excess of $750,000 without any further limitation. It is also to be noted that the term of the sublease to the partnership ended on August 1, 1949, whereas the term of the leasehold which it held from Franklin Polk Corporation ran to October 9, 1949. We are of the opinion, therefore, that petitioners' argument on this point must be rejected.

A further argument is advanced to the effect that the statutory provisions above should not be applied, since Emma Falk, who held 97 shares of the outstanding 1,200 shares of O. Falk's Department Store, Inc., was not a member of the partnership and had no interest in the department store operations and, for that reason, application of the personal holding company surtax to that corporation would, as to her, be inequitable. As noted above, the statute clearly covers the situation where a corporation received compensation for the use of its property by an individual owning 25 per cent or more of its stock. There is no qualification of that provision which could make it inapplicable to cases where there were other stockholders who were not entitled to use the property. The Congress for its own reasons enacted the statute as it is and it is not within our province to amend or revise it. More appropriately, the argument made is one for the ear of Congress. A somewhat comparable argument is also advanced to the effect that, regardless of the plain wording of the statute, Congress did not intend that the provisions of section 502 (f), *supra*, should apply to a *bona fide* real estate corporation, the main source of the income of which was composed of rent received by reason of its ownership of business properties. The argument so made was considered and decided contrary to the taxpayer's contention in *Hatfried, Inc.* v. *Commissioner*, 162 F. 2d 628, affirming the Tax Court on that point. In that connection, it is to be noted, also, that by section 223 of the Revenue Act of 1950, Congress has made the provisions of section 502 (f), *supra*, inapplicable "to rents received during taxable years ending after December 31, 1945, and before January 1, 1950, if such rents were received for the use by the lessee, in the operation of a

bona fide commercial, industrial, or mining enterprise, of property of the taxpayer." Congress made no change, however, as to the applicability of the section to such rents received during years ending prior to January 1, 1946.

The remaining question is whether the petitioners are liable under section 291 (a) of the Internal Revenue Code [4] for the additions to tax prescribed therein, by reason of their failure to file personal holding company tax returns for 1945. Having failed to file such returns, the petitioners are liable for the additions to tax, unless they have shown that such failure was "due to reasonable cause and not due to willful neglect."

On the evidence, we have found as a fact that the failure of the petitioners to file personal holding company tax returns for 1945 was due to reasonable cause, and not due to willful neglect. The evidence shows that the officers of both petitioners, David A. Falk and Frank E. Mandel, in failing to file the returns in question, relied upon the advice of a certified public accountant, who has actively practiced his profession in Tampa since 1927 and who is, and has been, generally recognized in the Tampa area as a tax expert. Though it develops that the advice given was in error, we are convinced that the advice was honestly given and was relied on in good faith by the petitioners. See and compare *Burton Swartz Land Corporation* v. *Commissioner*, 198 F. 2d 558, and *Safety Tube Corporation*, 8 T. C. 757, affd. 168 F. 2d 787.

*Decisions will be entered under Rule 50.*

---

[4] SEC. 291. FAILURE TO FILE RETURN.

(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful negelect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days within an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612 (d) (1).