WEBSTER CORPORATION, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50203, 50204, 50205. Filed October 19, 1955.

[1] Proceedings of the following petitioners are consolidated herewith: Webster Corporation, Docket No. 50203; Shelby Corporation, Docket No. 50204; Essex Corporation, Docket No. 50205.

*Charles C. Parlin, Esq.*, and *Margaret Smith, Esq.*, for the petitioners.

*Ellyne E. Strickland, Esq.*, and *Emil Sebetic, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The issue for decision is whether or not the amounts received by the petitioners during the years involved from the five farms owned by them constituted "rent" within the meaning of section 502 (g) of the Internal Revenue Code of 1939. The parties have agreed that if these amounts were rent then all other conditions necessary to constitute petitioners personal holding companies during such years were met and the petitioners are liable for the personal holding company surtaxes in the respective amounts determined, but if the amounts are not rent then those surtaxes are not due. Section 502 (g) defines "rent" as "compensation, however designated, for the use of, or right to use, property, * * *." See also Regs. 111, sec. 29.502–1 (10).

Each party has discussed local law in the hope of showing that it would support that party's contention, but it is conceded on behalf of each that there is no Iowa statute or case directly in point. However, this provision of the Internal Revenue Code should be construed to give a uniform application to a nationwide scheme of taxation if that is at all possible. *Burnet* v. *Harmel*, 287 U. S. 103; *Western Transmission Corporation*, 18 T. C. 818.

These petitioners were actively engaged in the operation of these farms, and, historically, efforts were made to exclude operating companies from the burden of the surtax of the personal holding company provisions. Those provisions were first enacted in the Revenue Act of 1934 to prevent tax avoidance by wealthy individuals who organized corporations to receive and hold some of their income and thus avoid the high rates on their individual income. H. Rept. No. 704, 73d Cong., 2d Sess. (1934), p. 11. Rent was then deliberately excluded from the definition of personal holding company income in the belief that corporations receiving rent were mostly operating companies and not mere holding companies. S. Rept. No. 558, 73d Cong., 2d Sess. (1934), p. 14; H. Rept. No. 1546, 75th Cong., 1st Sess. (1937), p. 6. A change was made in the Revenue Act of 1937 to prevent corporations which were not bona fide operating companies from escaping the surtax by investing just enough in rental property so that more than 20 per cent of their gross income would be from rent and consequently less than 80 per cent of the gross income would be personal holding company income. Rents were then included in personal holding company income unless they constituted 50 per cent or more of the gross income of the corporation. H. Rept. No. 1546, *supra.* It was also said in that report that "rents" was used in its

broadest sense. Definitions of rent have included such phrases as consideration paid for use or occupancy of property; something which a tenant renders out of the profit of the land which he occupies and enjoys; a certain profit either in money, provisions, or labor in return for the use of land. Black's Law Dictionary, 4th ed. (1951); *Logan Coal & Timber Association*, 42 B. T. A. 529, 536, affd. 122 F. 2d 848. Rent is usually payable periodically.

These petitioners were operating companies, and the record does not suggest that the ownership and operation of these farm lands was undertaken by them for the purpose of avoiding personal holding company surtaxes. An owner can receive rent in crops as well as in money, but where the owner who receives a percentage of the crop takes an active part in the operation by reserving and exercising the right of detailed supervision and direction of the operation of the farm, and the farmer is subject to all of the restrictions here present, the farmer appears to be in some category other than that of a tenant, and the money which the petitioners received appears to be more in the nature of income from their own use of their own land than rent received by them for permitting the farmer to use their land. Certainly some part of the amount which these petitioners received was received because of their activities in operating and supervising the farms. The share of the crop taken by the farmers in this case, whether they be considered employees, independent contractors, joint venturers, or something else, was in the nature of payment for their services in carrying out the instructions of the petitioners and their agent, the Farmers National Company, and the share retained by the petitioners was their return for their management and operation of the farms owned by them as well as for the use of their own land in the operations. The definition of rent under which this case must be decided is extremely broad, and it is not easy to fit the arrangements made by these petitioners into a fixed category from which the answer in this case will flow as a matter of course. Nevertheless, a conclusion has to be reached, and it is that the amounts received by the petitioners during the taxable years did not constitute rent within the meaning of section 502 (g).

Reviewed by the Court.

*Decisions will be entered for the petitioners.*