## SAFETY TUBE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10614.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1948.

Garnett S. Andrews, of Nashville, Tenn. (Garnett S. Andrews, of Nashville, Tenn., on the brief), for petitioner.

Fred E. Youngman, of Washington, D, C. (Theron Lamar Caudle, Sewall Key, Robert N. Anderson and Fred E. Young-

man, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States which sustained a determination of the Commissioner finding deficiencies in income tax of $1,138.23 and in personal holding company surtax of $9,221.34. An item of 25% surtax penalty in the amount of $2,305.34 was not sustained by the Tax Court, and is not involved.

The principal question arises out of the payment of $8,107.35, expenses of litigation, which was claimed as a deduction for the year 1940, upon the ground that it constituted an ordinary and necessary business expense. The Tax Court held that this amount was a capital expenditure and not deductible.

The facts are stipulated, and were adopted in the findings of the Tax Court. They are in substance as follows:

The petitioner, a Delaware corporation with its office at Nashville, Tennessee, was organized September 8, 1939 to take over a patent and other assets held by Garnett S. Andrews as trustee. The patent had been granted in 1933 to Constantine Bradley on an improvement in puncture-healing inner tubes for pneumatic tires. To finance the invention, Bradley solicited subscriptions for stock in a corporation to be formed for the manufacture and sale of the improved tubes, and issued to each subscriber a certificate acknowledging payment for the future shares and reciting an understanding that the money received would be used in perfecting and marketing the tube. Bradley died in December, 1934, having previously assigned the patent to Andrews, who took charge of the enterprise by agreement of the subscribers. On March 30, 1938, Andrews granted Sears, Roebuck & Company the exclusive right to sell the tubes for replacement purposes during a period of two years under a contract whereby a manufacturer would be licensed to produce them under the patent, pay royalties to Andrews, and sell the tubes to customers of Sears, Roebuck & Company. In accordance with the contract, the Cupples Company of St. Louis, Missouri, began manufacture in 1938 and remitted royalties to Andrews.

On August 10, 1939, prior to petitioner's incorporation, Benjamin C. Seaton filed suit in the state courts of Tennessee against Bradley's widow, Andrews, and others, alleging that during or before 1927 he had been granted three patents for improvements on inner tubes for vehicle tires, and had employed Bradley to sell interests therein under contracts which, among other things, provided that Seaton should sell, assign and set over to the purchaser the right to receive a stated percentage of all proceeds derived from the sale of rights under any or all of such patents with the understanding that title to such patents should remain in Seaton. The contracts for the sale of such interests provided:

"It is further understood and agreed by said parties that should any improvements be made by either party on any of the articles forming the subject of said Letters Patent, or any of them, and whether said improvements are patented or not, the same shall be subject to the provisions of this contract in regard to sharing in the proceeds of the sale to others of rights thereto."

The Seaton bill of complaint further alleged that such interests had been sold to various parties, that a like assignment of interest containing the above paragraph had been made to Bradley and his wife, and that the Bradley patent was an improvement on the Seaton patents. The bill of complaint prayed that Andrews be enjoined from disposing of the Bradley patent and any funds paid to him in connection therewith; that Sears, Roebuck & Company be required to make disclosure of the contract and funds paid; and that a decree be entered declaring Seaton the rightful owner of the Bradley patent, of all funds paid to Andrews by Sears, Roebuck & Company, and of the Sears, Roebuck & Company contract. On November 29, 1939, Seaton's bill of complaint was amended to pray, in the alternative, that a decree be entered in favor of Seaton in-

dividually and in favor of Seaton for the use and benefit of all persons who had purchased assignments of interests from him, "holding that they are entitled to a percentage of the funds realized from marketing said Bradley patent."

On November 3, 1939, the petitioner, having qualified to do business in Tennessee, was joined as a party defendant after having filed a petition which set forth that Andrews had assigned to it the patent, contract, and royalties upon its express agreement "to immediately qualify to do business under the laws of the State of Tennessee and to intervene in this cause, to the end that this Petitioner might be subject to the orders and decrees of this Court, and to the end that all of said assets received by this Petitioner from defendant Andrews would remain under the jurisdiction of Your Honor's Court and be subject to all orders and decrees of Your Honor * * *." The petition in intervention concluded with the prayer, which was granted, that petitioner be allowed to intervene and become a party defendant. The petitioner thereupon demurred to the Seaton bill of complaint upon the ground that it showed no cause of action. This demurrer was overruled in the chancery court of Davidson County, Tennessee, but on appeal the Supreme Court of Tennessee, on May 21, 1940, entered a decree in which it sustained the petitioner's demurrer "'insofar as it is directed to that part of the fourth prayer for relief, which prays that Seaton be declared to be the rightful owner of the Bradley patent, No. 1,924,148."

On May 18, 1940, the Supreme Court of Tennessee, in the case of Seaton v. Bradley [1] rendered an opinion on the defendants' demurrers in which it stated that the Seaton suit was one seeking to hold Bradley, and those claiming under him, liable as a constructive trustee for an alleged breach of trust and confidence, and to compel them to render an accounting for unjust enrichment, and continued:

"We, therefore, conclude that the facts, well pleaded in the bill, are sufficient to create a constructive trust as against Bradley and those claiming through him by immediate or ultimate assignment."

The Supreme Court of Tennessee sent the case back for trial on the remainder of the issues raised by the bill of complaint. At the trial the jury failed to agree, and on September 17, 1942, a decree dismissing the complaint was entered by consent of the parties.

On September 8, 1939, while the above suit was pending, Andrews conveyed to the petitioner, then just organized all assets held by him as trustee, including the Bradley patent and the royalties received which at that time amounted to $17,383.06 after deduction of expenses incurred. All of the $8,107.35 here in controversy was paid as attorneys' fees and litigation expenses in connection with the above suit.

We think the Tax Court was clearly correct in holding that the item of attorneys' fees and expenses of litigation was a capital expenditure. Legal expenses incurred in the defense or protection of title or rights to property constitute capital expenditures and are not deductible as ordinary and necessary expenses within the purview of § 23(a) (1), 26 U.S.C., 26 U.S.C.A.Int.Rev.Code, § 23(a) (1). This is specifically provided in § 19.24-2, Treasury Regulations 103 promulgated under the Internal Revenue Code and in force since 1916. Jones' Estate v. Commissioner, 5 Cir., 127 F.2d 231, 232. The rule is supported by numerous decisions, of which we cite only a few: Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17; Brawner v. Burnet, 61 App.D.C. 352, 63 Fed.2d 129; Farmer v. Commissioner, 10 Cir., 126 Fed. 2d 542; Bowers v. Lumpkin, 4 Cir., 140 Fed.2d 927, 151 A.L.R. 1336, certiorari denied, 322 U.S. 755, 64 S.Ct. 1266, 88 L.Ed. 1585; Porter Royalty Pool, Inc. v. Commissioner, 6 Cir., 165 F.2d 933. The same rule applies to amounts paid to compromise or to obtain dismissal of litigation involving title to property. Murphy Oil Co. v. Burnet, supra; Brawner v. Burnet, supra.

Petitioner contends that these decisions are not applicable where the is-

---
[1] Not designated for publications.

sue of title is incidental to a controversy in which the main relief sought is a judgment for amounts representing income. It contends that when it amended the prayer of its petition in the Tennessee court on November 29, 1939, all questions of title to the patent were removed from the case and the gist of the action became the right to the income which had been earned from the manufacture of the patented device. We think this contention clearly has no merit. The amendment involved no abandonment of the original prayer for a decree in favor of Seaton, holding him to be the rightful owner of the Bradley patent. The amendment was in the alternative and only limited the prayer to a request for a decree that all persons who had purchased assignments of interest from Seaton, and Seaton himself, were entitled to a percentage of the funds realized from marketing the Bradley patent in case the court should rule against Seaton with reference to the question of title. The suit clearly involved the title to the Bradley patent as a principal issue and the accounting for royalties as held by the Tax Court was only a corollary to the determination of rights under the patent. The gist of the controversy is the right to the asset which produced the income. If the Bradley patent belonged to Seaton, then obviously the petitioner was not entitled to royalties. Unlike the case of Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, and Rassenfoss v. Commissioner, 7 Cir., 158 F.2d 764, relied on by petitioner, the litigation here struck at the very ownership of the patent itself. Moreover, the fact that the Supreme Court of Tennessee held that the petition was demurrable with reference to the question of title does not affect the taxability of the item for attorneys' fees. Although that court held that a cause of action was not stated upon this phase of the case, the title to the patent was attacked in the suit and the expenses of litigation were paid out in defense of the title. The Tax Court's conclusion that the expenditures for litigation were not deductible was clearly correct.

We think also that the decision must be affirmed with reference to the item of personal holding company surtax. Section 500, 26 U.S.C.(1940 ed.), 26 U.S.C.A.Int. Rev.Code, § 500, provides that "There shall be levied, collected, and paid, for each taxable year beginning after December 31, 1938, upon the undistributed subchapter A net income of every personal holding company (in addition to the taxes imposed by chapter 1) a surtax * * *."

It is conceded that the petitioner in all respects falls within the definition of personal holding company in § 501, 26 US.C.(1940 ed.), 26 U.S.C.A.Int.Rev.Code, § 501. More than 80% of petitioner's gross income for the taxable year consisted of royalties and more than 50% of its stock was owned by four individuals. No dividends were declared in 1940, and the surtax imposed was concededly laid upon the undistributed subchapter. A net income of the petitioner. The amount is not questioned if the deficiency was correctly determined. The contention with reference to this phase of the controversy is that petitioner should not be subjected to what in effect is a penalty [Cf. Knight Newspapers, Inc. v. Commissioner, 6 Cir., 143 F.2d 1007, 154 A.L.R. 1267] for not distributing its income. During 1940, petitioner asserts, it held the income as constructive trustee for the beneficiaries to be determined by the chancery court in the Seaton suit, and hence did not have unrestricted title thereto. The Supreme Court of Tennessee, in its final ruling on the demurrers, concluded that the facts well pleaded in the bill were sufficient to create a constructive trust against Bradley and those claiming under him. However, this issue was never judicially determined in a trial. The Tax Court found that the petitioner was under no restriction as to the disposition of its income; that no impounding of its funds and no order restraining the free use of them was shown; and that the apprehensions of petitioner's officers that they might lose the case in the Tennessee courts and therefore should not declare dividends were not a legal defense to the applicability of the statute. It is the general rule that sums received by a taxpayer under a claim of right which was the subject of litigation are taxable.

North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93. Application of the rule requires that the finding of deficiency be sustained. The factual situation in Knight Newspapers, Inc. v. Commissioner, supra, is sharply distinguishable. There the dividend received and included in income was rescinded. We think the holding in that case has no bearing here.

The decision of the Tax Court is affirmed.