**ADDISON v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13915.

United States Court of Appeals
Eighth Circuit.

Nov. 3, 1949.

Rehearing Denied Dec. 5, 1949.

Marion Hirschburg, Ames, Iowa, and Charles T. Akre, Washington, D. C. (Hirschburg & Reynolds, Ames, Iowa, and Miller & Chevalier, Washington, D. C., were with them on the brief), for petitioner.

Harry Marselli, Special Assistant to Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and Lee A. Jackson, Special Assistants to Attorney General, were with him on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court which sustained a finding of deficiency in petitioner's income tax for the year 1944. The deficiency resulted from the disallowance of a deduction from taxpayer's income of an item of $3569.35 which she had paid in 1944 for attorney fees, court costs and a bond expense.

The evidentiary facts are not in dispute. Petitioner came from England in 1920 to live with her brother, whose wife had recently died. She was then twenty years of age and became employed solely as her brother's housekeeper, receiving her living expenses, clothing and spending money as compensation. Her brother, John Heber Duro, died April 10, 1941. During his life he transferred without express consideration substantial property to petitioner, much of which was in the form of stocks and securities. Thus, in 1922 he gave petitioner 290 shares in the Des Moines Ice and Fuel Company. The company sold its properties in 1926 and as a result petitioner received $21,750 in cash, besides stock in the Central Service Company, which at the time had a value of $12,397.50. In 1929 she received from her brother 600 shares of stock in the Great Western Coal Company, which she sold in 1939 for $26,678.86. In 1931 he gave petitioner a farm, which in 1943 had a value of $6,875. In 1930 she received a gift of bonds of the

Interurban Railway Company of the face value of $5,000, and at various times her brother gave her diamonds of an undisclosed value. She received no property from any other source and no income except such as was derived from her brother's gifts. Prior to April 22, 1943, petitioner had disposed of much of the property received from her brother and reinvested the proceeds so that on April 22, 1943, she held various securities which had cost her $188,818.59. In addition to the securities which she acquired from the proceeds of the sale of the property which her brother had given her, she still retained on that date out of original transfers, property of the value of $22,597.50.

John Heber Duro left a purported will in which petitioner was named as sole beneficiary of his estate but the document was held to be void on the ground that it had been obtained by fraud and undue influence of petitioner. Petitioner then surrendered to Louise Duro Shaw, the daughter and sole heir of John Heber Duro, deceased, real estate and personal property of the approximate value of $75,000, and Louise Duro Shaw became the administratrix of her father's estate. In 1943, as administratrix of her father's estate and as his sole heir, she brought suit against petitioner and alleged that petitioner had either obtained from John Heber Duro certain named properties or had secured them from proceeds of property obtained from him.

The deductions from petitioner's income for the year 1944 are for expenditures made in defense of that action and hence it becomes important to determine the character of the action. The case ultimately reached the Supreme Court of Iowa and is reported as Shaw v. Addison, 239 Iowa 377, 28 N.W.2d 816. In her petition in that case it was alleged,

"That the legal title to, possession and control of all the aforesaid property was obtained by the defendant by fraud and undue influence exercised by her over and upon the intestate and the transfers, conveyances and delivery thereof to her were wholly without consideration and any title she has thereto is bare legal title and which

she has held and is holding in trust for the intestate and his heirs."

It was alleged and admitted that Louise Duro Shaw was the daughter and sole heir of John Heber Duro. As relief in that action petitioner prayed,

"* * * that the various transfers and conveyances aforesaid by and through which the defendant holds or claims to hold title to the real and personal property aforesaid be set aside and held for naught; that the defendant be required to transfer to the plaintiffs all of the property, effects, and assets of the intestate held by her in trust; that the defendant * * * be restrained and enjoined from selling, assigning, conveying, transferring or in any manner disposing of the property of the intestate as aforesaid * * *."

In an amended petition in that action it was among other things alleged,

"That the plaintiffs are informed and believe that the defendant claims all of the money and property herein and heretofore described either by virtue of alleged gifts or by the investment and reinvestment of the proceeds and income from alleged gifts but the plaintiffs allege that none of the alleged gifts were ever consumated or completed in the decedent's lifetime; that the subject of such gifts and the income and proceeds therefrom at all times remained under the dominion and control of decedent; that there was no completed delivery or transfer in his lifetime; that the decedent never intended such transfers or conveyances or purported transfers or conveyances as gifts; that decedent never intended to divest himself of dominion or control over the subject thereof or the income or proceeds therefrom; * * *."

The trial court in that action filed findings of fact and conclusions of law in which it was recited that plaintiffs as administratrix and as sole heir "seek to establish their ownership of certain moneys, properties and securities which are standing in the name or are in the possession of the defendant." These findings also recite that,

"The defendant (petitioner in the instant proceeding) claims the property involved

in this action either as: (1) Gifts from the decedent; (2) The exchange of the subject matter of said gifts for other property; or (3) Purchase with the income and proceeds from said gifts.

"Upon these issues, it is apparent that the defendant's claim to the property is wholly upon the validity of said gifts, for if she acquired no title through the alleged gifts, she could hardly improve her position by exchanging the subject matter thereof for other property or by purchase with the income or proceeds therefrom."

The trial court found ownership of about half the property in plaintiffs and ownership of the other half in defendant. Both parties appealed to the Supreme Court. That court reversed the decision of the trial court on defendant's appeal and affirmed it on plaintiffs' appeal. Shaw v. Addison, supra.

 Petitioner claims that the expense incurred by her in defending this litigation was an ordinary and necessary expense for the management, conservation or maintenance of property held for the production of income as provided in Section 23(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (2). There is no question but that the expenditures were made by her, nor is there any question raised as to the reasonableness of the expenditures, but it is the contention of respondent that these expenses were incurred by the taxpayer in litigation which involved primarily title to property. Expenditures made in defense of title to property, or to remove claims of others against property, or to defend or perfect title to property are capital expenditures and not deductible from gross income as expenses. Shwabacher v. Commissioner, 9 Cir., 132 F.2d 516; Jones' Estate v. Commissioner, 5 Cir., 127 F.2d 231; Owens v. Commissioner, 10 Cir., 125 F.2d 210; Safety Tube Corp. v. Commissioner, 6 Cir., 168 F.2d 787. Section 29.24-2 of Treasury Regulations 111 provides that,

" * * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense."

Petitioner does not seriously question the correctness of this rule or principle but contends that the litigation did not involve the defense or protection of her title but rather that the suit was in the nature of a suit for an accounting. A study of the opinion of the Supreme Court in Shaw v. Addison, supra, and of the undisputed findings in the instant case, convinces us that the petitioner here was called upon to defend her title in the litigation in which she made these expenditures. There was in fact no accounting and the only condition under which an accounting could have been had was the failure of the defendant in that action to make good her title and claim to the property involved. Certainly plaintiffs' right to an accounting in that litigation could only have accrued on proof of title in the plaintiffs and, consequently, proof of lack of title in defendant. Hochschild v. Commissioner, 2 Cir., 161 F.2d 817 and Rassenfoss v. Commissioner, 7 Cir., 158 F.2d 764, relied upon by petitioner are readily distinguishable upon the facts. In those cases the primary purpose of the suit was for an accounting and any question of title was merely incidental.

The decision of the Tax Court is therefore affirmed.