*Decision will be entered under Rule 50.*

ESTATE OF JOSEPH P. MORGAN, DECEASED, AND MARGARET KOEHLER MORGAN, SURVIVING SPOUSE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81977–81980. Filed October 13, 1961.

[1] Proceedings of the following petitioners are consolidated herewith: Edward C. Morgan, Docket No. 81978; Harry A. Hughes and Jo Ann W. Hughes, Docket No. 81979; and Edward J. DeMartini and Patricia M. DeMartini, Docket No. 81980.

*Edmund L. Brunini, Esq., C. Delbert Hosemann, Esq.,* and *William H. Talbot, Esq.,* for the petitioners.

*Jackson L. Bailey, Esq.,* for the respondent.

FAY, *Judge:* The Commissioner determined deficiencies in income taxes, as follows:

| Docket No. | | 1956 | 1957 |
|---|---|---|---|
| 81977 | Estate of Joseph P. Morgan, deceased, and Margaret Koehler Morgan, surviving spouse | $6,898.77 | $2,336.67 |
| 81978 | Edward C. Morgan | 9,655.12 | 5,559.66 |
| 81979 | Harry A. Hughes and Jo Ann Hughes | 4,051.90 | 1,967.10 |
| 81980 | Edward J. DeMartini and Patricia M. DeMartini | 4,593.85 | |

Some of the issues were conceded by the petitioners at trial. The remaining issues for decision are whether all or some part of the amounts paid in each year as attorneys' fees and expenses is deductible as an ordinary and necessary expense and is not a capital expenditure, and whether all or only some of the petitioners are entitled to deduct the portions which are allowable.

### FINDINGS OF FACT.

Most of the facts are stipulated and are found as stipulated.[2]

The taxpayers concerned filed their individual income tax returns for the years in question, all of which were joint returns except for those of Edward C. Morgan, with the district director of internal revenue for the district of Louisiana.

The legal fees and expenses which the petitioners assert are deductible were incurred in or on account of a lawsuit brought by R. M. Stricker against Joseph P. Morgan (hereinafter referred to as Mor-

---

[2] It is noted that the amounts listed as additional taxes sought by the respondent in paragraph 37 of the stipulation of facts for the petitioners Harry A. Hughes et ux. appear to be the amount of the item claimed by these petitioners as a deduction and not the additional taxes sought by the respondent. This is an obvious clerical error, the nature of which is clearly indicated by the fact that the amount of taxes sought by the respondent from these petitioners is stated in the petition as $4,051.90 for 1956 and $1,967.10 for 1957, which amounts are admitted by the respondent in his answer.

gan). This suit grew out of a transaction whereby Morgan acquired a piece of land known as the Esperanza Plantation.

Morgan was a member of a partnership [3] which operated the Louisiana Box and Lumber Company. Stricker was engaged in locating stands of timber, arranging for their purchase and then finding purchasers for various portions of the timber so that a profit could be realized on the transaction. Over a period of years he entered into a series of transactions with Morgan. In these transactions Morgan would purchase the timber that Stricker located (on some occasions Morgan would take title to the land as well as the timber) and after the timber had been sold Morgan would take back his costs from the proceeds and the profits would be divided between Morgan and Stricker.

On December 30, 1940, Morgan and Stricker acquired certain timber upon lands in Concordia Parish, Louisiana, known as the Esperanza Plantation (hereinafter referred to as the plantation). At the same time and under the same deed Morgan purchased the land on which the timber was standing.

During the 1940's certain oil leases were granted by Morgan covering this property. In 1950 oil was discovered on this land, and the Magnolia Petroleum Co. (hereinafter referred to as Magnolia) began to produce it. Morgan had retained under his oil leases covering the property the customary one-eighth royalty interest.

On August 18, 1952, Morgan formally conveyed one-half of the one-eighth royalty interest to his son, E. C. Morgan. At the same time Morgan, his wife, Margaret K. Morgan, and E. C. Morgan joined in certain gifts of the royalty interest to the daughter of Morgan, Evelyn M. Wiemer, and her husband, George C. Wiemer, Jr.; to the minor children of Evelyn; and to the minor daughter of E. C. Morgan, Patricia Morgan, now DeMartini. After these deeds, the royalty interest originally reserved by Morgan was owned as follows:

| | |
|---|---|
| Morgan and his wife | $\frac{3}{128}$ |
| E. C. Morgan | $\frac{3}{128}$ |
| Evelyn M. Wiemer | $\frac{2}{128}$ |
| George C. Wiemer, Jr. | $\frac{2}{128}$ |
| Jo Ann Wiemer Hughes | $\frac{2}{128}$ |
| Robert Edward Wiemer | $\frac{2}{128}$ |
| Patricia DeMartini | $\frac{2}{128}$ |

On October 15, 1955, Stricker brought suit in the Chancery Court of Wilkinson County, Mississippi, against Morgan and two of the oil companies working the plantation, in which suit Stricker asserted that he had been in partnership with Morgan with respect to the purchase of all the rights in the plantation. In his prayer for relief

---

[3] The partners were Morgan, his son, E. C. Morgan, and Fred N. Owen, who is not involved in this case.

Stricker requested an accounting and that he be declared entitled to a conveyance of a one-half interest in the property from Morgan. He also requested that the deeds executed by Morgan and others giving interests in the property to various members of his family be declared void because they were without consideration. Finally, he included a prayer for general relief.

Morgan appeared in the suit by his attorneys and obtained a removal of it to the United States District Court for the Southern District of Mississippi where jurisdiction was based on diversity of citizenship.

Upon commencement of the suit, Magnolia, which was extracting oil from the plantation and which was also made a defendant in the suit, ceased making payments to the owners of the royalty interest pending the outcome of the proceedings. At that time William H. Talbot, attorney for the family of Morgan, assembled those having an interest in the royalty payment. Evelyn M. Wiemer and E. C. Morgan were present for the purpose of representing themselves as well as their minor children. Talbot indicated to those present that if Morgan should lose the suit it might be necessary for them to "kick back" the royalties they had received from the property to pay the judgment and that they were vulnerable to suit in Mississippi because all of them owned property there. All present determined that they would share proportionately in the expenses and cost of litigation and the cost of handling the impounded funds, further agreeing to pay proportionately any judgment recovered by Stricker.

In order to avoid the income tax disadvantages of bunching income from the royalty, steps were taken to bring about continued payments to the holders of the royalty interest during the litigation. Conferences were held between attorneys for the royalty holders, attorneys for Magnolia, and attorneys for a bonding company to devise a form of bond which would protect Magnolia in the event the litigation terminated adversely to the royalty holders. A form of bond was agreed upon and purchased by the royalty owners in favor of Magnolia.

During the course of the litigation and following an application to the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson, Louisiana, Morgan was adjudicated an incompetent and his wife appointed curatrix of his person and property. Expenses of this proceeding, as well as the costs of obtaining a satisfactory bond to achieve a continuous flow of the royalty income, were considered by the royalty owners as costs of the Stricker litigation and divided among them proportionately.[4] Deductions for legal fees and expenses in the Stricker litigation were claimed as follows:

---

[4] The returns of three of the owners of the royalty interest who agreed to participate in the expenses of the Stricker litigation are not in question here.

| | 1956 | | | |
|---|---|---|---|---|
| | Attorneys' fees | General expenses | Expenses of bond | Total |
| Morgan and his wife | $11,812.50 | $708.82 | $10.35 | $12,531.67 |
| E. C. Morgan | 11,812.50 | 708.82 | 10.35 | 12,531.67 |
| Harry and Jo Ann Hughes | 7,875.00 | 472.57 | 6.89 | 8,354.46 |
| Edward and Patricia DeMartini | 7,875.00 | 472.57 | 6.89 | 8,354.46 |
| | 1957 | | | |
| Morgan and his wife | 4,687.50 | 1,225.39 | 1,500.00 | 7,412.89 |
| E. C. Morgan | 4,687.50 | 1,225.39 | 1,500.00 | 7,412.89 |
| Harry and Jo Ann Hughes | 3,125.00 | 816.92 | 1,000.00 | 4,941.92 |
| Edward and Patricia DeMartini | | | | |

Ninety percent of the time expended by the attorneys was used in preparing evidence and doing legal research for the presentation of the defense in the Stricker litigation and in defending the suit in court, and 10 percent of their time was used to release royalty payments during the litigation and to have Morgan declared incompetent.

The District Court in the Stricker litigation found that Stricker had shown he had an undivided one-half interest in all the timber on the plantation and was entitled to an accounting with respect to it, from which Stricker received an amount approximating $300. However, the court further found that he had not shown he had any other interest in the land. The Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court, and the Supreme Court denied certiorari.

During the period prior to the Stricker litigation, the mineral lease on the plantation produced substantial income by way of royalties. Stricker, in instituting his suit, intended to claim both title to a portion of the property and the past income from it, and neither intention was predominate.

OPINION.

The petitioners contend that they are entitled to deduct the entire amount of the expenses of the Stricker litigation under section 212 of the Internal Revenue Code of 1954, or under section 162(a) of the Code. The petitioners' position is that a Mississippi court could not affect title to real property in Louisiana and that the Stricker litigation was a suit for an accounting between partners, the expenses of which are deductible. (Since the result would be the same under either section 162 or section 212, the deductibility of these expenses will be considered only with respect to the latter section, which deals with deduction of expenses for the production of income.) The respondent, on the other hand, contends that none of these expenses are deductible because they were incurred in connection with litigation

to defend title to property and, therefore, should be considered capital expenditures. The answer lies somewhere in between.

The Commissioner's regulations deny a deduction under section 212 for expenses paid or incurred in defending or protecting title to property. This provision of the regulations has been approved and applied in many cases, both by this and other courts. Only a few of these cases need be cited. *Brown* v. *Commissioner*, 215 F. 2d 697 (C.A. 5, 1954), affirming on this issue 19 T.C. 87 (1952); *Louisiana Land & Exploration Co.*, 7 T.C. 507 (1946), affd. 161 F. 2d 842 (C.A. 5, 1947); *Jones' Estate* v. *Commissioner*, 127 F. 2d 231 (C.A. 5, 1942), affirming 43 B.T.A. 691 (1941); *Addison* v. *Commissioner*, 177 F. 2d 521 (C.A. 8, 1949), affirming a Memorandum Opinion of this Court; *Safety Tube Corp.* v. *Commissioner*, 168 F. 2d 787 (C.A. 6, 1948), affirming 8 T.C. 757 (1947).

The first of several questions raised by the petitioners' contention is that the Stricker suit cannot be considered litigation in defense of title because the Mississippi court and the United States District Court for the Southern District of Mississippi lacked jurisdiction to affect title to the plantation in Louisiana.

We do not think that either the Mississippi court or the Federal District Court in Mississippi lacked such jurisdiction. The Supreme Court of Mississippi in the case of *Jacobson* v. *Jones*, 236 Miss. 640, 111 So. 2d 408, 411 (1959), quotes the earlier Mississippi case of *Sharp* v. *Learned*, 182 Miss. 333, 181 So. 142 (1938), as follows:

that the courts of this state have no jurisdiction over the subject matter of a suit involving the contested title to land situated in another state where there is no question of specific performance of a contract, enforcement of trust, or the doing of any act which from previous dealings is binding on the conscience of the parties, although the court had jurisdiction of the parties.

In the Stricker litigation, the plaintiff failed to establish as a fact that the title to the fee in the plantation had been taken by Morgan for a partnership of Stricker and Morgan. Had he succeeded in establishing that fact, then conveyance of an undivided one-half interest in the land to Stricker would have been an act binding upon the conscience of Morgan. Thus, the Stricker litigation would fall within the exception stated by the Mississippi court to the general rule that a Mississippi court cannot affect title to land in another State. This, of course, is dicta, and there appears to be no Mississippi case directly in point, but in the absence of a case it must be assumed that the Mississippi courts would follow the rule established in the majority of common law States that upon facts such as those alleged by Stricker in his bill of complaint an equity court may order a defendant who is before the court to make a deed of the property. 1 Beale, Conflict of Laws, secs. 97.1–97.10, pp. 417–428.

If a Mississippi court could require the conveyance of title, undoubtedly a Federal District Court sitting in the State of Mississippi in a case where jurisdiction is based on diversity of citizenship could do the same. *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938) ; *Guaranty Trust Co.* v. *York*, 326 U.S. 99 (1945).

We deem it immaterial that Stricker asserted an equitable interest in the land rather than a legal one and that the title to the land could have been affected only indirectly through an order of the court requiring Morgan to execute a deed.

Therefore, we conclude that title to the plantation could have been affected in the Stricker litigation. In view of this conclusion, it is unnecessary to decide whether these expenses would be deductible if the court in the Stricker litigation lacked jurisdiction to affect title. There is some authority that they would not. *Safety Tube Corp.* v. *Commissioner, supra.*

The second question is raised by the petitioners' argument that the defendants in the Stricker litigation cannot be considered to have been defending their title because that suit was for an accounting between partners. In support of this contention, the petitioners cite *Kornhauser* v. *United States*, 276 U.S. 145 (1928) ; *Rassenfoss* v. *Commissioner*, 158 F. 2d 764 (C.A. 7, 1946), reversing a Memorandum Opinion of the Board of Tax Appeals; *Hochschild* v. *Commissioner*, 161 F. 2d 817 (C.A. 2, 1947), reversing 7 T.C. 81 (1946) ; *Sergievsky* v. *McNamara*, 135 F. Supp. 233 (S.D. N.Y. 1955) ; *Selig* v. *Allen*, 104 F. Supp. 390 (M.D. Ga. 1952) ; and *Beer* v. *United States*, 132 F. Supp. 282 (S.D. Ala. 1955). All of these cases may be distinguished. Some are distinguishable on the grounds that the suit was one in which income was primarily involved and title to property was merely incidental. Others are distinguishable on the grounds that the defendant in the suit was motivated to defend by some reason other than a desire to protect his title.

A review of the foregoing cases in addition to the many other decided cases would be of little aid, since each case turns on its own facts.

The present case seems to be most closely related to *Addison* v. *Commissioner, supra.* In that case the niece of the taxpayer had brought suit against her asserting that she had obtained property from her brother, father of the niece, by exerting undue influence. The taxpayer claimed the right to deduct the expenses of defending this suit on the grounds that it was a suit for an accounting. The Court of Appeals, affirming this Court, however, denied the deduction, saying that the niece's right to an accounting would depend on whether her title to the property was upheld. The same is true in the present case.

Therefore, since the basic question in the Stricker litigation was the ownership of the plantation, we believe that the taxpayers con-

cerned were defending their title to that property in spite of the fact that Stricker, in his suit, requested an accounting of what he asserted to be a partnership transaction.

The third issue raised by the petitioners in the alternative is, may a portion of the legal fees and expenses of this litigation be deducted as an expense of defending past income from the property which was also in issue in the suit? We hold that it may.

Stricker in his suit claimed not only the plantation but also the past income from it. This Court in *Midco Oil Corporation*, 20 T.C. 587 (1953), held that in the case of a suit for income-producing property the portion of expenses relating to past income from the property could not be deducted. That case was based upon a finding that the major objective of the suit was to dispute title to property. Where, as here, both property and the income from it have been the objectives of a suit and neither is predominant, an apportionment has been made. *Daniel S. W. Kelly*, 23 T.C. 682, 689 (1955), affd. 228 F. 2d 512 (C.A. 7, 1956), and *Estate of Thomas E. Arnett*, 31 T.C. 320 (1958). The evidence available for use in making this apportionment is not entirely satisfactory. However, judging from the income from the royalty shown for the years 1956 and 1957 on the tax returns which are before us, it would seem that the amount alleged by Stricker in his bill of complaint was not excessive. That amount was "in excess of $500,000.00." The value of the property must also be determined. The notices of deficiency valued the property as "in excess of $2,000,000.00." Stricker, in his bill of complaint, placed the value "in excess of $3,000,000.00." In view of the income factor, the higher value appears to be more reasonable. Using these figures, one-sixth of the fees and expenses, after allowance for items separately treated hereinafter, should be allowed as a deduction under section 212 of the Code.

The fourth question is whether the petitioners, other than the estate of Morgan, are entitled to a deduction for fees and expenses relating to past income from the property in view of the fact that they were not made defendants in the Stricker litigation. In *E. L. Potter*, 20 B.T.A. 252 (1930), it was held that a taxpayer might deduct the expenses of litigation in which he was not a defendant if he would be substantially affected by the result. Here the petitioners other than the estate of Morgan could be bound by some of the issues decided in the Stricker litigation if suit were brought against them in Mississippi. They may be considered in privity with Morgan because, although they obtained their interests in the plantation from him prior to the commencement of the Stricker litigation, they were donees and paid no value for the property. *Hayes* v. *First Joint Stock Land Bank*, 174 Miss. 880, 165 So. 605 (1936). Therefore, their participa-

tion in the Stricker litigation was appropriate, and they may deduct their portion of the expenses relating to past income under section 212.

The fifth question is whether the fees, expenses, and premium relating to the bond obtained to maintain the flow of royalty income may be deducted under section 212 of the Code. These amounts are clearly deductible as sums paid for the collection of income. The amount of expenses separately stated as applying to the bond may be deducted. We have found that 10 percent of the time of the attorneys was spent in dealing with the bond and the incompetency proceedings for Morgan. Seventy-five percent of this 10 percent of legal fees and general expenses is allowable as expenses pertaining to the bond.

The sixth and final question is whether a part of the fees relating to Morgan's incompetency proceedings is deductible under section 212 by any of the taxpayers involved. We hold that it is. *Estate of Frederick Cecil Bartholomew*, 4 T.C. 349 (1944), appeal dismissed 151 F. 2d 534 (1945). Since 75 percent of the portion of the fees and expenses pertaining to the bond and the incompetency proceedings has already been allocated to the bond, the remaining 25 percent is allocated to the incompetency proceedings. Since Morgan's income tax returns reveal substantial income-producing property, we consider one-half of this sum as pertaining to property held for the production of taxable income. Of this, however, only that portion paid from Morgan's funds is deductible because this is solely the expense of Morgan. We deem him to have contributed to this sum in proportion to his ownership in the retained royalty interest.

*Decisions will be entered under Rule 50.*