In re ESTATE of G. A. BUDER, Deceased.

G. A. BUDER, Jr., Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17411.

United States Court of Appeals Eighth Circuit.

April 21, 1964.

Rehearing Denied May 12, 1964.

* Sitting by designation.

G. A. Buder, Jr., St. Louis Mo., for petitioner and filed brief with Richard O. Roberts, St. Louis, Mo.

Carolyn R. Just, Atty., Tax Division, Dept. of Justice, Washington, D. C., for respondent and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Tax Division, Dept. of Justice, Washington, D. C.

Before SANBORN,[1] VOGEL and BLACKMUN, Circuit Judges.

PER CURIAM.

In redetermining the income tax liability of the Estate of G. A. Buder, deceased, of which G. A. Buder, Jr., is the representative, for the period from the decedent's death in April 1954, through December 31, 1954, and for the year 1955, the Tax Court ruled[2] that 90% of the expenses of litigation[3] incurred and paid by the estate during those taxable periods in defending against the claims of Oscar E. Buder in an action brought by him against G. A. Buder on January 2, 1946, in the Circuit Court of the City of St. Louis, Missouri, was allowable as a deduction from gross income, and that 10% of such expenses was not deductible, being allocable to the defense of title to shares of Arcadia Refining Company stock, a controverted issue in the Oscar Buder action.[4] The Tax Court then determined that there was an overpayment of $4,700.46 for 1954 and a deficiency of $4,282.61 for the year 1955.

The pertinent facts are undisputed.[5] G. A. Buder died on April 14, 1954. He and Oscar were brothers and had been partners in the practice of law in St. Louis, Missouri, from 1908 to 1946, under the firm name of Buder & Buder. The state court action brought by Oscar was for a partnership accounting, and involved, among other claims, the title to the shares of Arcadia stock above mentioned. After the death of G. A. Buder, G. A. Buder, Jr., as executor of his will, was substituted as defendant in that action. The total expense incurred and paid by him, as executor, on behalf of the

1. Judge Sanborn was present at the oral argument on the petition for review of this case and participated in the reading of the briefs, in the panel's post-argument conference, and in the agreed disposition of the appeal. He concurred in the opinion in preliminary form. His death on March 7, 1964, prevented his formal concurrence in the final draft.

2. T.C.Memo 1963–73, with opinion by Judge Scott not reviewed by the entire court.

3. Legal fees, accountants' fees, referee's compensation, transcript costs and lesser expenses.

4. The companion case concerning the decedent's taxable years 1952–54, inclusive, was tried jointly with the estate's case but is not the subject of any petition for review here.

5. Certain of the factual background material is apparent from the opinions in Buder v. United States, 221 F.Supp. 425 (E.D.Mo.1963) and State ex rel. Pontiac Realty Co. v. Nangle, 315 S.W.2d 214 (Mo.Sup.1958). See also In re Franz' Estate, 372 S.W.2d 885 (Mo.Sup.1963).

estate during the period from the decedent's death to December 31, 1955, attributable to the Oscar Buder litigation, was $114,726.40, all of which he claimed was deductible in computing the income tax liability of the estate. He asks that this Court review and set aside as clearly erroneous the decision of the Tax Court that 10% of these expenses was nondeductible.

There is no controversy as to the applicable taxing statutes and regulations.

Section 212 of the Internal Revenue Code of 1954, 26 U.S.C. § 212, provides that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the production or collection of income * * * [or] for the management, conservation, or maintenance of property held for the production of income * * *." Treasury Regulations § 1.212–1(i) provides that "Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212 * * *", whereas Regulations § 1.212–1(k), in pertinent part, provides: "Expenses paid or incurred in defending or perfecting title to property * * * constitute a part of the cost of the property and are not deductible expenses."

In his brief, the taxpayer says:

"The expense involved in the instant case is ordinary and necessary because it was the statutory duty of the petitioner as executor to defend the litigation, and he could not have conducted his administration of the estate without contracting such expense. The expense is, therefore, incurred in the management, conservation and maintenance of property held for the production of income, and is deductible even though questions of title were incidentally involved."

The Commissioner in his brief relies, of course, upon the established rule that expenses of litigation which has as its primary purpose the defending or the perfecting of title to property are capital expenditures and constitute a part of the cost of the property and are not deductible. Addison v. Commissioner, 177 F.2d 521, 523 (8 Cir. 1949); Industrial Aggregate Co. v. United States, 284 F.2d 639, 644, 645 (8 Cir. 1960), and cases cited; Manufacturers Hanover Trust Co. v. United States, 312 F.2d 785, 788–89 (Ct.Cls.1963), cert. denied 375 U.S. 880, 84 S.Ct. 150, 11 L.Ed.2d 111 and cases cited. In his reply brief the taxpayer says:

"The brief for the respondent fails to join issue on the only question before the Court in this proceeding. Petitioner is not questioning the factual determination by the Tax Court that 10% of the litigation expenses incurred and paid related to the defense of title to the Arcadia Refining Company stock. Certainly we realize that such factual finding is not subject to review here, but the rule of law applied by the Tax Court to that fact is. Thus the opening portion of respondent's argument is not germane to the case.

"At page 13 of respondent's brief are cited numerous cases in support of the rule that expenditures made to defend or perfect title are not deductible. It is highly significant that not one of the cases there invoked involved the income tax of a fiduciary with relation to either an estate or a trust. General rules applicable to individuals or corporations are of no assistance in arriving at a solution of the question of deductibility of litigation expenses incurred and paid by an estate."

It is clear that the sole contention of the petitioner-executor is that because he was a fiduciary and as such was legally obligated to defend against Oscar Buder's adverse claim of title to the shares of stock, the litigation expenses, which were admittedly reasonably and

necessarily incurred and paid in so doing, were deductible. The main reliance of the petitioner in support of that contention was and is the case of Loyd v. United States, 139 Ct.Cl. 626, 153 F. Supp. 416, decided by the Court of Claims in 1957. That case held that legal fees necessarily incurred by representatives of an estate in litigating the validity of a charitable bequest made by another decedent were deductible as essential to the proper administration of the estate. That the Loyd case will not sustain the contention of the petitioner in the instant case was made clear by the Court of Claims in 1963 in Manufacturers Hanover Trust Co. v. United States, supra, 312 F.2d 785, holding that certain litigation expenses incurred and paid by a fiduciary in defending title were not deductible and were capital expenditures. We quote the following from pages 790–791 of 312 F.2d:

> "Plaintiff argues that, nevertheless, we are compelled by our decision in Loyd v. United States, 153 F.Supp. 416, 139 Ct.Cl. 626 (1957), to rule in its favor. That case involved the deductibility of legal fees by the executors of a daughter's estate, which were paid to counsel for litigating the validity of a charitable bequest by her mother, the amounts of which would be included in the estate of the daughter, as sole heir of the grantor, if the mother's charitable grant was invalid under state law. As a result of this litigation holding the charitable bequest partly invalid, most of the property was delivered to the executors of the daughter. While recognizing the validity of the rule requiring capitalization of the expenses of title, the court interpreted the record as indicating that '[t]he primary purpose, or at least the motivating force, of the litigation was not the question of who had title to the property, rather it was that the proper distribution of the estate's assets could not have been had without a prior determination by the court of the validity of the gift.' Loyd v. United States, supra, 153 F.Supp. at 421, 139 Ct.Cl. at 634. Although title to certain property was one aspect of the litigation, it was incidental to the primary purpose of settling the two estates. The daughter's executors had a disputed claim to the assets marked for the charitable gift, but the overriding concern of the litigation, the court held (153 F.Supp. at 420, 139 Ct.Cl. at 633–634), was not the issue of title but the proper administration of the daughter's estate which could not have been had without 'first obtaining the answer to the question of validity of the grant to the church.' In the present case, unlike Loyd, there is no showing, and on this record no reason to believe, that the proceeding by plaintiff in the New York Supreme Court was instituted because it was absolutely essential to the further management of the trust. There was no impending marshalling and distribution of the assets held by plaintiff; the trust could well have gone on, as provided by the indenture, until challenged by a proper adverse party. In this light, the litigation voluntarily begun after [the daughter's] death had for its direct, if not sole, purpose a legal declaration, helpful but not mandatory, whether the indenture was effective to give the trust continued title to the property. The costs of this type of quiet-title proceedings are capital expenditures rather than deductible expenses of trust administration."

We also quote the following language from page 789 of 312 F.2d:

> "[C]ontrary to plaintiff's assertion, section 1.212–1(i) of the Treasury Regulations, quoted above, does not 'flatly allow' all fiduciaries' expenses of litigation as deductions. Such expenses are allowed only so long as they do not fall within the

proscription of subsection (k) of the same regulation (and Section 263 of the Code and its regulations), pertaining to non-deductible capital expenditures. We find nothing in the 1954 Code or regulations indicating that fiduciaries, when faced with the necessity of making capital expenditures, should be afforded treatment so radically different from that accorded other taxpayers. Neither Congress nor the Treasury has purported to authorize a fiduciary to consider *all* of its litigation expenditures as 'ordinary and necessary expenses.' "

We conclude that the Tax Court did not err in ruling that 10% of the litigation expenses in question was not deductible, since that percentage was incurred and paid by the representative of the Estate of G. A. Buder in defending the title to the shares of stock claimed by Oscar E. Buder.

The decision under review is affirmed.