**Don GILMORE and Sue Gilmore,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 41973.**

United States District Court
N. D. California, S. D.

June 11, 1965.

Freed & Freed, San Francisco, Cal., for Don Gilmore.

WEIGEL, District Judge.

## MEMORANDUM FOR JUDGMENT

On undisputed facts, this case presents this single question: May a taxpayer who defends his title to stock in a divorce action add to the basis of such stock subsequently sold or exchanged those legal expenditures fairly attributable to his efforts to protect his title to the stock in the divorce action?

In United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), the Supreme Court held, with respect to claims of the same taxpayer, that such expenditures were not deductible from gross income. As will be pointed out in greater detail below, the Supreme Court did not decide the "basis" question.

The well established general rule is that costs incurred in defending title are capital expenditures to be added to basis.

> "It is a rule virtually as old as the federal income tax itself that costs incurred in defending or perfecting taxpayer's claim to ownership of capital assets are capital expenditures, and not expenses deductible from ordinary income. *The rule is equally applicable to business and nonbusiness activity; * * *.*

> "The gist of the controversy between taxpayer and the managing officers in the state court litigation was the ownership of the stock. * * * Since perfection of taxpayer's claim to ownership was the essence of the suit, the costs of the litigation were capital expenditures and, * * * were not expenses deductible from ordinary income. *Taxpayer is not denied tax credit for these disbursements: as the Tax Court held, they are added to taxpayer's basis in the stock, thus receiving the same tax treatment as the property itself.*" Spangler v. C. I.R., 323 F.2d 913, at 919–920 (9th Cir., 1963). [Emphasis added.]

A wealth of authority supports this statement of the law. See, e. g., Morgan's Estate v. C.I.R., 332 F.2d 144 (5th Cir., 1964); In re Buder's Estate, 330 F.2d 441 (8th Cir., 1964); Wise v. C.I.R., 311 F.2d 743 (2d Cir., 1963); United States v. Wheeler, 311 F.2d 60 (5th Cir., 1962), cert. den., 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 53 (1963); Munson v. McGinnes, 283 F.2d 333 (3rd Cir., 1960), cert. den., 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103 (1960); Harris v. United States, 275 F.2d 238 (9th Cir., 1960); Lewis v. Commissioner of Internal Revenue, 253 F.2d 821 (2d Cir., 1958); Kelly v. Commissioner of Internal Revenue, 228 F.2d 512 (7th Cir., 1956); Shipp v. Commissioner of Internal Revenue, 217 F.2d 401 (9th Cir., 1954); Brown v. Commissioner of Internal Revenue, 215 F.2d 697 (5th Cir. 1954); Commissioner of Internal Revenue v. Coke, 201 F.2d 742 (5th Cir., 1953); Addison v. Commissioner of Internal Revenue, 177 F.2d 521, 23 A.L.R. 2d 897 (8th Cir., 1949); Porter Royalty Pool, Inc. v. Commissioner of Internal Revenue, 165 F.2d 933 (6th Cir., 1948), cert. den., 334 U.S. 833, 68 S.Ct. 1347, 92 L.Ed. 1760 (1948); Bowers v. Lumpkin, 140 F.2d 927, 151 A.L.R. 1336 (4th Cir., 1944), cert. den., 322 U.S. 755, 64 S.Ct. 1266, 88 L.Ed. 1585 (1944); Schwabacher v. Commissioner of Internal Revenue, 132 F.2d 516 (9th Cir., 1942); Jones' Estate v. Commissioner of Internal Revenue, 127 F.2d 231 (5th Cir., 1942); Farmer v. Commissioner of Internal Revenue, 126 F.2d 542 (10th Cir., 1942); Moynier v. Welch, 97 F.2d 471 (9th Cir., 1938); Croker v. Burnet, 61 App.D.C. 342, 62 F.2d 991 (1933); Murphy Oil Co. v. Burnet, 55 F.2d 17 (9th Cir., 1932), aff'd (on other issue) 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318 (1932); and cf. Iowa Southern Utilities Co. v. Commissioner of Internal Revenue, 333 F.2d 382 (8th Cir., 1964), cert. den., 379 U.S. 946, 85 S.Ct. 438, 13 L.Ed.2d 543 (1964); Industrial Aggregate Co. v. United States, 284 F.2d 639 (8th Cir., 1960).

It was never intimated, in any of the cited cases, that the origin of the litigation in which attorneys' fees were expended—whether "personal" or "business"—was relevant to a determination that the fees were a "capital expenditure". The only pertinent issue as to the *nature* of the suit was a determination as to whether the defense of title to property was the matter for which the expenditures were made.

In conformity with this orthodox doctrine, the decision in Harris v. United States, supra, indicated that litigation expenses in a state divorce action may be considered, in proper circumstances, as "costs incurred in defending or perfecting taxpayer's claim to ownership of capital assets", Spangler v. C.I.R., supra; and thus they could be designated as capital expenditures. Accord, Hughes v. United States, 196 F.Supp. 37 (E.D. Texas, 1961). Of course, there are the usual problems of fact in ascertaining that attorneys' fees were primarily expended to protect property rights.[1] Such a factual determination may well be an especially difficult task when the fees are expended in a divorce action. However, that problem has been removed from this case by stipulation. The parties here have accepted the findings of fact prepared by Commissioner Wilson Cohen of the United States Court of Claims in earlier litigation. Commissioner Cohen's Finding No. 30 apportions a precise percentage of the total fees exclusively to plaintiff Don Gilmore's efforts to protect his property interest in the stock.

However, the United States argues that the decision of the Supreme Court in United States v. Gilmore, supra, places a new and "controlling gloss on the 'defense of title' cases".

That decision, as noted earlier, involved the same taxpayer who is one of the plaintiffs in this case.[2] Furthermore,

1. See Industrial Aggregate Co. v. United States, supra, 284 F.2d at 644–645 for an illuminating discussion of this issue.

2. The other is his present wife.

the same litigation expenses were the subject of the first case. But the taxpayer there sought to obtain an entirely different benefit.

In the first Gilmore case, the taxpayer contended that the litigation fees were deductible under § 23(a)(2) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 23(a)(2), which permits as deductions from individuals' gross income

> " * * * ordinary and necessary expenses * * * incurred * * * for the * * * conservation of property held for the production of income."

■ There are numerous limitations upon the availability of such deductions. Two are that (1) the "expense item involved must be one that has a business origin", (id. 372 U.S. at 45, 83 S.Ct. at 627), rather than a "personal" origin,[3] and that (2) the expense should not be one properly treated as a capital expenditure. These have been regarded conceptually as two separate restrictions on deductibility of litigation expenses. See, e. g., the discussion of Gilmore in Spangler v. C.I.R., supra, 323 F.2d at 917–920. Now, however, the Government argues that a capital expenditure which is "personal" in origin somehow thereby loses its status as a capital expenditure.

The only authority cited in support of the Government's theory is the first Gilmore case. As a matter of fact, however, the Supreme Court expressly declined to endorse that theory in the Gilmore opinion itself. The Court said:

> " * * * it is unnecessary to consider the further question suggested by the Government: whether that portion of respondent's payments attributable to litigating the issue of the existence of community property was a capital expenditure or a personal expense. In neither event would these payments be deductible

from gross income." United States v. Gilmore, supra, 379 U.S. at 52, 83 S.Ct. at 631.

Nor does analysis of the Gilmore opinion suggest that the principles enunciated therein preclude a finding that litigation expenses (which are nondeductible because the suit in which they were expended was "personal" in origin) are capital expenditures. The Court arrived at its decision in Gilmore through construction of § 23(a)(2) and § 24(a)(1). Neither of those statutes is remotely applicable to the issues framed by the pleadings here. Perhaps there may be the whiff of a suggestion in the passage just quoted that litigation expenses in a "personal" state court suit will not be capital expenditures because, *as a factual matter*, the expenses would not have been primarily to defend title. That factual issue has been removed from this case.

The only effort the Government makes to elaborate its theory is contained in this excerpt from its trial brief:

> "We submit that legal expenses incurred in a divorce action, having been held to constitute non-deductible personal expenditures cannot now be held to be capital expenditures. They were incurred in the context of resisting a claim stemming from the marital relationship and not from income-producing activity. It is hard to avoid the conclusion that the taxpayer in this action is, in effect, asking for what the Supreme Court has already said he cannot have—a tax deduction (or benefit) based on a personal expenditure incurred in connection with his divorce."

■ The Supreme Court did, indeed, rule against the deduction. The Government surely need not be reminded that all tax "benefits" are not tax "deductions". Neither reason nor authority support the Government position in blandly asserting

---

3. According to the decision in United States v. Gilmore, supra, this limitation arises from two sources, either of which would accomplish the same result: (1) statutory construction of § 23(a) (2), and (2) application of § 24(a) (1) which expressly renders nondeductible "[p]ersonal, living, or family expenses."

that any expenses connected in any way with a divorce action should not in any conceivable sense result in a tax benefit.

■ The Gilmore decision compels no such consequence. Indeed, on the facts here, it teaches just the opposite, particularly in the light of the long lines of authority establishing that "defense of title" litigation expenses are capital expenditures whether arising in suits primarily "business" or "personal" in character.[4]

Counsel for plaintiffs will prepare judgment accordingly and submit the same after obtaining defendant's approval as to form.

---

4. In addition to Harris v. United States, supra, and Hughes v. United States, supra, among the cases already cited, the following are a few of the cases in which the origin of the suit in which capital expenditure fees had nothing to do with the business operations of the property involved: Lewis v. Commissioner of Internal Revenue, supra, (origin of the suit was effort by estranged wife to obtain a property settlement through an "accounting" action); Kelly v. Commissioner of Internal Revenue, supra, (origin of the suit was a controversy over gift property, part of which was determined to be held in constructive trust); Shipp v. Commissioner of Internal Revenue, supra, (origin of the suit was a claim by wife's executor that certain property was community property); Commissioner of Internal Revenue v. Coke, supra, (origin of suit was an attempt to recover community property fraudulently concealed in a divorce action); Addison v. Commissioner of Internal Revenue, supra, (origin of the suit was the contention that taxpayer had acquired property through fraud and undue influence over her brother).